# EXHIBIT H

## <u>DECLARATION OF DAVID A. RUHNKE, Esq.</u>

I, David A. Ruhnke, declare as follows, pursuant to 28 U.S.C. § 1746:

1.    I am an attorney admitted to practice in the states of New York and New Jersey, as well as in several federal district courts, several federal courts of appeal, and the United States Supreme Court.

2.    I have been a practicing attorney for 37 years. I have considerable experience in death penalty matters, at trial, on appeal and in post-conviction proceedings. I practice in both state and federal courts. I have been a member of the Federal Death Penalty Resource Counsel Project for the past seven years.

3.    On January 19, 2006, I was appointed, *nunc pro tunc* (with the appointment effective as of August 26, 2005) as counsel for Mr. Lee in his 2255 proceeding. On the same date, and in the same manner, this Court also appointed my co-counsel, Laurence Komp.

4.    Mr. Lee had been sentenced to death in a federal capital trial held in the Eastern District of Arkansas in 1999.

5.    During the course of Mr. Lee's 1999 penalty phase hearing, the government sought to establish that Mr. Lee presented a future danger in prison if given a life sentence. The government based its theory in part on Mr. Lee's purported high score on the Hare Psychopathy Checklist-Revised (PCL-R) and the designation of him as a "psychopath" by government expert Thomas V. Ryan,

Ph.D., a psychologist. Dr. Ryan evaluated Mr. Lee, assessing him with a high PCL-R score, and concluded that he represented a future danger even if confined to a maximum security prison.

6.    On June 26, 2006, Mr. Komp and I (hereafter "we") filed on Mr. Lee's behalf, a Motion Pursuant to 28 U.S.C. § 2255 to Vacate Conviction and Sentence. [Doc. 1] (hereafter Motion). Before filing the Motion we knew that numerous highly respected and highly credentialed forensic psychologists had declared that there was no scientific or psychological basis to support a link between a high PCL-R score and an individual's potential for engaging in institutional violence in the future, and that this information was known at the time of Mr. Lee's trial. We also knew that Dr. Ryan himself had come to accept these positions. I had previously litigated this issue in a federal capital case in the District of Massachusetts.

7.    The 2255 raised two claims relating to the Government's and Dr. Ryan's use of the PCL-R.

a.    The first claim, at Point H in the Motion, addressed trial counsel's failure to object to the Government's cross-examination of a defense expert on the issue of psychopathy, based on the fact that the cross-examination was beyond the scope of direct examination. Motion at 33.

b.    The second claim, at footnote 14 in the Motion, asserted that:

> Dr. [Thomas] Ryan, in sworn testimony and affidavits filed after his testimony in this case, has stated that the Hare Psychopathy Checklist (PCL-R) is not an appropriate instrument to be utilized in evaluating the future danger of capital defendants and that he no longer stands by such testimony or analysis.

Motion at 34. In the footnote we stated that we "are prepared to offer evidence" in support of the claim. *Id.*

8. The Motion provided no additional facts in support of the claim raised at footnote 14 (i.e., that the PCL-R was not an appropriate instrument for evaluating an individual's future dangerousness in prison).

9. The Motion did not include affidavits from experts, or submissions of any kind, in support of the claim raised at footnote 14.

10. We knew at the time the Motion was filed that there was available evidence from Dr. Ryan himself (i.e., Dr. Ryan's sworn testimony and affidavits) that supported the claim that trial counsel had been ineffective for failing to raise a *Daubert* challenge to the PCL-R evidence.

11. We also knew, prior to the June 26, 2006 filing, that there was additional evidence that supported the claim, emanating from a wide array of experts in the field of forensic psychology. Prior to filing the Motion we reviewed materials relating to the PCL-R from colleagues experienced in federal death penalty practice. These materials informed us that a number of nationally regarded forensic psychologists with particular expertise in the use and application of the

PCL-R had concluded that there was no empirical support for using the PCL-R to assess the likelihood of an individual's future violent conduct in prison. These experts had rejected the concept that the PCL-R was a reliable evaluative tool for assessing the future dangerousness of an individual in custody.

12.    The materials included a memorandum which discussed another death penalty case, *United States v. Willis Haynes,* in which Dr. Ryan had withdrawn an evaluation that had been based on the PCL-R following a challenge to its reliability. The memorandum identified several highly credentialed and nationally renowned forensic psychologists, with particular expertise in the administration and application of the PCL-R, who had challenged Dr. Ryan's use of the instrument to establish future dangerousness in prison. Some had conducted independent research on the PCL-R, and all were well versed in the research literature regarding its use. The materials also included the *Daubert* motion from the *Haynes* case. The *Daubert* motion provided detailed factual, scientific and legal analyses as to why the PCL-R could not reliably predict future dangerousness in prison. The motion also identified additional well-credentialed experts in the field who had submitted affidavits to the Court assailing the reliability of the PCL-R as a risk assessment tool for a person who would remain incarcerated for life. The common theme of these affidavits was that the results of what little research had been done on the relationship between a high PCL-R score and the likelihood of

future violence in prison did not support the conclusion that one was related to the other.

13.    Based on this information, we knew, before filing the Motion to Vacate, that leading figures in the field of forensic psychology were willing to author declarations or affidavits, and provide testimony explaining why the use of the PCL-R in the manner employed in Mr. Lee's case was scientifically unacceptable at the time of Mr. Lee's trial, and violated professional and ethical standards.

14.    Prior to filing Mr. Lee's Motion to Vacate we did not reach out to any psychological experts, including those who had been identified to us, for the purpose of obtaining affidavits or declarations, or to secure their testimony at a possible hearing pursuant to 28 U.S.C. § 2255.

15.    Although we had reviewed the materials containing the *Daubert* motion filed in *Haynes* we pled none of its detailed factual information in support of the claim asserted in footnote 14 of the Motion.

16.    Following the District Court's denial of the Motion, and over two years after its initial filing, we filed a 59(e) Motion. In the 59(e) Motion, for the first time, we asserted additional facts in support of the claim raised in footnote 14 and submitted expert affidavits challenging Dr. Ryan's use of the PCL-R (although

those affidavits had been prepared for, and submitted in, other cases). In rejecting our submissions as successive, the District Court held that:

> Lee's original § 2255 Petition included only one sentence referencing this argument. That lone reference appeared in a footnote . . . .
>
> Petitioner now devotes over 25 pages to this argument. Clearly, the theory is much more developed now than the cursory reference made in requesting 2255 relief. Again, Petitioner does not explain why the information he now includes was not included in connection with his original petition. Petitioner's conclusory statement that Dr. Ryan, subsequent to his testimony in this case, stopped using the PCL-R to evaluate future dangerousness was not sufficient to place the Court on notice of the full argument that Petitioner now presents.

*United States v. Lee,* No. 406-CV-1608-GTE, 2008 (E.D. Ark.) [Doc. 6 at 11].

17.    There was no strategic or tactical rationale for not asserting the readily available facts in support of our the claim asserted in footnote 14 that the "Hare Psychopathy Checklist (PCL-R) is not an appropriate instrument to be utilized in evaluating the future danger of capital defendants;" nor was there a strategic or tactical rationale for not obtaining and appending supporting documentation to our Motion from any of the forensic psychologists who had demonstrated their willingness to challenge Dr. Ryan's particular use of the PCL-R, based on the fact that such use was scientifically unsupportable, and violated professional and ethical standards. We thought that by pleading the issue we had met the requirements of § 2255.

I declare, under penalties of perjury, that the foregoing is true and correct.

Dated: 09.25.2013

David A. Ruhnke, Esq.