# EXHIBIT M

DECLARATION OF JACK T. LASSITER

1. My name is Jack T. Lassiter. I am an attorney in Little Rock, Arkansas. I have been licensed to practice law in Arkansas since 1975. My practice has largely focused on criminal defense. I am currently a partner at Lassiter & Cassinelli in Little Rock.

2. In December 1997, Cathleen V. Compton and I were appointed to represent Daniel Lee in his federal capital trial in the Eastern District of Arkansas. At that time I was working at the firm of Hatfield & Lassiter.

3. I was lead counsel for the guilt phase proceedings of the trial. Ms. Compton was lead counsel for the penalty phase proceedings.

4. The guilt phase proceedings commenced on March 8, 1999.

5. I did not have an opportunity to try and interview James Wanker before he testified because the government did not reveal his identity until just before he testified, probably the day before. I was responsible for preparing and conducting his cross-examination.

6. Mr. Wanker testified that he had heard Mr. Lee make an inculpatory statement. The prosecution relied on this statement in its arguments to the jury to return a guilty verdict against my client.

7. I've recently been informed that Mr. Wanker had told authorities on several occasions prior to the trial that Mr. Lee's statement was not credible because he knew Mr. Lee to be a braggart who frequently made up stories about being involved in crimes in order to impress others and to try to fit in by appearing tough. I was informed that Mr. Wanker maintained this view of the statement made by Danny Lee even after his arrest and at the time Mr. Wanker testified.

8. I have no recollection of the government informing us that Mr. Wanker had reason to disbelieve and did disbelieve Mr. Lee's statement, nor do I recall the government ever giving us any information about why Mr. Wanker thought Mr. Lee's statement was not credible. I am confident I did not have any such information because there is no reference to it in my cross-examination.

9. I would have certainly wanted to have known about this information because it indicated that the underlying statement was not trustworthy or reliable. If this information had been disclosed to me, I would have moved to exclude the statement under the Federal Rules of Evidence.

10. If the government had disclosed this information, and I had not succeeded in excluding the statement, I would have used it in my cross-examination of Mr. Wanker. It would have been important to inform the jury that Mr. Wanker had warned authorities that Mr. Lee's statement was not credible and that this warning was based on his knowledge of

Mr. Lee, on his observations at the time the statement was made, and on his experience that Mr. Lee would "brag" about things he had not in fact done.

11. It was important for us to impeach Mr. Wanker's testimony. During my cross-examination, I attempted to do so by noting that he had not called the police after hearing Mr. Lee's statement. Mr. Wanker explained that at the time he blew it off as just talk. While this still allowed the jury to believe he had changed his mind, I did not dare ask him anything further about this, such as whether he still thought it was just talk, without knowing in advance what his answer would be. Indeed, in the absence of any information to the contrary, the very fact that the government brought him all the way from Spokane and put him on the stand to testify against Mr. Lee suggested to me that he would not have given me a favorable answer.

12. If I had known the information that the government failed to disclose, I would have cross-examined Mr. Wanker aggressively and elicited all the information he had given to authorities for why the inculpatory statement was not credible. I would have also been able to demonstrate to the jury that even at the time of the trial, Mr. Wanker continued to maintain that the statement was just empty bragging and not trustworthy, and would have argued that the jury should therefore also not see it as a true remark.

13. I remember that at the penalty phase proceeding, the government presented evidence concerning Mr. Lee's alleged role in the murder of Joseph Wavra in Oklahoma in 1990. The government argued that even though the facts of the crime established that Mr. Lee was involved in the murder itself, he "got off" with a plea to robbery because the prosecutors decided to voluntarily drop the murder charge and give Mr. Lee, who was a juvenile at the time, a break.

14. I have recently learned that this is not what occurred. I was informed that Mr. Lee's murder charge was dismissed after it was determined there was insufficient evidence to support the charge. The government never gave us this information.

15. This information would have been favorable to Mr. Lee's penalty phase defense. Had it been disclosed, we would have certainly used it at trial to rebut the government's claim that Mr. Lee was guilty of a prior murder and that the prosecution had let him "get away with" just a plea to robbery.

I declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated: _____9-7-18_____

Jack T. Lassiter