**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| **DANIEL LEWIS LEE,** | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **Case No. 2:19-cv-00468-JPH-DLP** |
| | ) | |
| **WARDEN, USP-TERRE HAUTE,** | ) | **CAPITAL CASE** |
| **UNITED STATES OF AMERICA,** | ) | **EXECUTION SCHEDULED FOR** |
| | ) | **DECEMBER 9, 2019** |
| Respondents. | ) | |

---

**MOTION FOR STAY OF EXECUTION**

---

MORRIS H. MOON
Bar# 24032750 (TX)
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

GEORGE G. KOUROS
Bar # 420813 (CT)
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

Counsel for Petitioner Daniel Lewis Lee

Dated: November 8, 2019

**Preliminary Statement Regarding Citations and Designations**

Petitioner Daniel Lewis Lee shall be referred to throughout this pleading as Petitioner or Mr. Lee. Respondents shall be referred to as the Government. Citations to documents filed in the district court criminal docket, *United States v. Lee*, No. 4:97-cr-00243 (E.D. Ark.), shall be designated as "Doc. No." Citations to the consecutively-paginated trial transcript shall be designated as "Tr." Citations to the attached exhibits shall be designated as "Attachment." Citations to the previously-filed Petition for Writ of Habeas Corpus (Dkt. 1) shall be designated at "Pet." Citations to exhibits attached to the Petition for Writ of Habeas Corpus shall be designated as "Exh." Citations to the Government's Response in Opposition to Daniel Lewis Lee's Petition for a Writ of Habeas Corpus (Dkt. 14) shall be designated as "GR."

## I.    INTRODUCTION

Petitioner Daniel Lewis Lee respectfully requests a stay of execution pending the Court's consideration of his Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241.

In his petition, Mr. Lee seeks redress for grave constitutional violations that he has never had a meaningful opportunity to remedy. First, he has set out well-supported allegations to establish his Sixth Amendment rights were violated when his trial counsel failed to challenge inflammatory junk science purporting to show Mr. Lee was a "psychopath," which the Government used to persuade jurors he would be a danger in the future. He has also presented compelling grounds for relief, one pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and one under *Napue v. Illinois*, 360 U.S. 264 (1959), related to the Government's false and misleading claim that Mr. Lee committed a prior murder and got away with it, also made to prove to jurors Mr. Lee was a future danger.

Mr. Lee has diligently sought to vindicate his rights, and two separate federal judges found that the alleged infirmities tainted the outcome of his sentencing; yet both were precluded from granting relief because of structural problems in Mr. Lee's § 2255 proceedings. In the midst of his pursuit of relief, the Government selected Mr. Lee as the first person to be executed in more than sixteen years, under a new federal protocol announced simultaneously with his and the execution dates for four other federal prisoners. Mr. Lee filed his petition pursuant to § 2241 in this Court as soon as he reasonably could, on September 26, 2019, because it is the only path available to him for the proper consideration of the merits of his claims.

As his petition and the Government's Response in Opposition make clear, beneath the surface of procedural obstacles to relief, there are critical factual disputes that have never been addressed, further fact-findings to be made, documents to be turned over, and witnesses to be

1

heard. Those issues cannot be considered fully and fairly, or given the close scrutiny they deserve but have never had, under the pressure of a clock ticking down toward a December 9th execution date.

As discussed below, granting Mr. Lee's request for a stay poses minimal harm to the Government and none at all to the public. The words of another court faced with a looming execution date and important unresolved questions are on point here: "no significant harm to the public interest could arise from the proper, informed, deliberate adjudication" of Mr. Lee's claims. *See Harris v. Johnson*, 323 F. Supp. 2d 797, 810 (S.D. Tex. 2004). Rather, in a case like his, where the local prosecutors who tried the case, the respected federal judge who presided at his trial, and the family members of the victims have all voiced their belief that a death sentence is not the just punishment for him, the equities weigh heavily in Mr. Lee's favor.

The petition lays out the extraordinary facts and circumstances relating to his substantial grounds for relief, which this Court has the power to consider and remedy. In light of the looming, irrevocable harm to Mr. Lee that would result from his unjust execution and for the additional reasons discussed below, Mr. Lee believes issuance of a stay of execution is warranted.

## II.    MR. LEE IS ENTITLED TO A STAY OF EXECUTION.

A stay of execution is an equitable remedy, and a party moving for such a stay must show: (1) a significant possibility of success on the merits; (2) irreparable harm will result in the absence of a stay; (3) the balance of harm is in favor of the moving party; and (4) the public interest supports a stay. *Hill v. McDonough*, 547 U.S. 573, 584 (2006) (citing *Barefoot v. Estelle*, 463 U.S. 880, 895-896); *see also, Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007). Where the request for a stay is based on a petition filed pursuant to § 2241 following a proceeding under 28

U.S.C. § 2255, as in this case, the moving party must establish that the petition cannot be dismissed as successive; that it presents "substantial grounds upon which relief might be granted;" and that the grounds to be considered were pursued diligently. *Barefoot*, 463 U.S. at 895; *see also*, *Garza v. Lappin*, 253 F.3d 918, 920-21 (7th Cir. 2001) (quoting *Delo v. Stokes*, 495 U.S. 320, 321 (1990)).[1] Mr. Lee can meet these criteria.

### A. Mr. Lee Can Demonstrate a Significant Possibility of Success on the Merits of His Claims.

As noted previously, Mr. Lee has raised three compelling grounds for relief, supported by detailed factual allegations, in his petition: that he was deprived of a meaningful opportunity to vindicate his Sixth Amendment trial rights; that the prosecution suppressed material information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and that the prosecution presented testimony it knew or should have known was false and misleading to jurors at Mr. Lee's sentencing in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) and *Giglio v. United States* (1972). He has ample evidence and precedent supporting his claims, and the Court may issue the requested stay of execution where he shows the likelihood of success on the merits of any one of these. While discovery is necessary to fully flesh out his claims, he can demonstrate that he has a strong likelihood of success on the merits and, as such, the Court should give this factor substantial weight.

---

[1] Mr. Lee asserts that the principles guiding the U.S. Supreme Court's decision in *McFarland v. Scott*, 512 U.S. 849 (1994), where the Court held a stay of execution was required for a petitioner to file his first habeas petition, while not controlling here, are nonetheless relevant in assessing the equities of his case. *McFarland*, 512 U.S. at 858-59. As his petition argues, Mr. Lee was deprived of his right to effective assistance of counsel, and due to his prior counsel's prejudicial errors and omissions, Mr. Lee has never had a meaningful opportunity to vindicate his constitutional rights; he, moreover, has been deprived of a meaningful opportunity to have the merits of his alleged *Brady* and *Napue* violations considered due to the Government's continued suppression of material evidence. "Where this opportunity is not afforded, '[a]pproving the execution of a defendant before his [petition] is decided on the merits would clearly be improper'." *Id.* at 858 (quoting *Barefoot*, 463 U.S. at 889).

**1. It is highly likely that Mr. Lee will prevail on his Sixth Amendment claim.**

In his § 2241 petition, Mr. Lee has presented a substantial claim of trial ineffectiveness based on trial counsels' unreasonable failure to properly challenge the Government's use of a deeply unreliable and misleading forensic tool—the Psychopathy Checklist (PCL-R)—at the penalty phase of his capital case. Mr. Lee has also demonstrated that if such a challenge had been made, the jury would never have heard any of this prejudicial evidence and, as Judge G. Thomas Eisele, the judge who presided over the trial, found, absent that evidence it is very questionable whether the jury would have sentenced Mr. Lee to die.

Mr. Lee has presented substantial evidence establishing that, at the time of trial, psychological studies existed casting doubt on the validity of using PCL-R scores to predict future violent behavior in prison. As Mr. Lee explains in detail, although it was standard practice by the defense bar at the time of the trial to challenge this use of the PCL-R, trial counsel failed to investigate or challenge the Government's expert, Dr. Thomas Ryan, on these grounds. Pet. 1 at 10-12. Had defense counsel done so, it is clear that the jury would never have heard the damning PCL-R evidence because Dr. Ryan would have withdrawn his opinion on the matter entirely, as he had in two other federal capital cases cited by Mr. Lee. Pet. 1 at 12; *see also* Exh. F (declaration of Dr. Ryan, submitted in *United States v. Stitt*, No. 2:98-cr-00047-RAJ-RJK-1 (E.D. Va.), where he disavowed his previous reliance on the PCL-R in capital cases and noted that a challenge to the PCL-R was available at the time of the *Stitt* trial, which predated Mr. Lee's).

Unfortunately, as explained in the § 2241 petition, Mr. Lee has been deprived of a meaningful opportunity to have his Sixth Amendment claim considered in his § 2255 proceeding because his habeas counsel compounded trial counsel's errors by failing to comply with basic

habeas requirements under circuit rules governing § 2255. Pet. 1 at 19-22; *see also* Exhs. G & H. This error foreclosed review of the Sixth Amendment violation.

When he had completed district court proceedings but was appealing the denial of his § 2255 motion, the Supreme Court significantly changed the law and announced a narrow remedy in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v. Thaler,* 569 U.S. 413 (2013), for certain significant failures of post-conviction counsel. Mr. Lee diligently sought to avail himself of it, but was precluded by circuit interpretation of § 2255 law.

Based on the unique facts and circumstances of his case, it is clear that a structural problem precluding effective § 2255 review has occurred. Pet. 1 at 36-38. Given the compelling circumstances of his case and the previous finding that absent the PCL-R evidence Mr. Lee likely would not have been sentenced to death, he must have access to a forum in which to receive at least one meaningful opportunity to present the claim. *Id.* This is one of those rare situations where § 2255 remedy has proved inadequate to "test the legality" of his sentence of death, and as such, this Court has—as his § 2241 petition sets forth—jurisdiction to both consider and provide a remedy for his substantial grounds for relief. Pet. 1 at 30-41; *see Barefoot*, 463 U.S. at 895; *see also*, *Garza*, 253 F.3d at 920-21. In light of the legal and factual complexity of Mr. Lee's case, this Court should grant a stay to ensure careful review before Mr. Lee is executed.

**2. It is highly likely that Mr. Lee will prevail on his *Brady* and *Napue* claims.**

Mr. Lee has, in his § 2241 petition, also made a compelling case for relief based on the Government's suppression of favorable, material evidence that would have rebutted a predicate fact alleged at trial as a central part of the future dangerousness aggravator—that Mr. Lee was responsible for the murder of Joseph Wavra in Oklahoma when he was a teenager and that he

had "gotten away" with it when he was allowed by state prosecutors to plead guilty to robbery. Pet. 1 at 41-56.

As Mr. Lee has explained in his § 2241 petition, newly-discovered facts show that the robbery plea was not a "gift" from the state prosecutors as the Government told Mr. Lee's capital jury but rather was mandated by an Oklahoma judge who found lack of probable cause to support the charge after a preliminary hearing. Pet. 1 at 48-49. Mr. Lee has made credible allegations that the Government knew this fact because Government agents prepared the punishment phase case where local Oklahoma law enforcement officials testified, and were involved in the Government's investigation and presentation of the Wavra evidence at Mr. Lee's federal capital sentencing. In addition, the Arkansas federal district court has already determined that if it was true that "the Oklahoma state court held a preliminary hearing that the evidence was insufficient to establish probable cause that Lee was guilty of murdering Joey Wavra, *that evidence is material*" as to punishment. *United States v. Lee*, No. 4:97-cr-00243-JLH, slip op. at 14 (E.D. Ark. Feb. 26, 2019) (Holmes, J. (emphasis added)).

Mr. Lee has also alleged, in connection with the Wavra matter, that the Government violated due process by presenting evidence that was false or that created a false impression and allowing this evidence to stand uncorrected in violation of *Napue*. He has set forth in his § 2241 petition a well-supported basis for relief regarding this alleged constitutional violation and established credible allegations that the Government knew or should have known that the Wavra evidence was false and/or misleading. Given the centrality of the Wavra evidence to the Government's presentation at sentencing, it was reasonably likely that it affected the judgment of the jury. Pet. 1 at 58-59.

Mr. Lee also has set out compelling facts demonstrating that he has been unable to obtain judicial review of these claims through no fault of his own. Because of a structural problem with § 2255 (when the Government suppresses exculpatory evidence relevant to capital sentencing through the entire post-conviction proceedings no remedy exists for these constitutional violations) review is foreclosed in the Arkansas district court and Eighth Circuit.

Mr. Lee can thus show a strong likelihood he will succeed on the merits of his *Brady* and *Napue* claims. He is facing imminent execution; he has proven that his death sentence was obtained through Government misconduct; and a federal court has already determined that the misconduct was prejudicial in that he would have not otherwise been sentenced to death. Under these exceptional circumstances, and in light of the structural problem he has encountered in seeking to vindicate his rights pursuant to § 2255, this Court has jurisdiction to consider Mr. Lee's substantial grounds for relief. *See Barefoot*, 463 U.S. at 895; *see also*, *Garza*, 253 F.3d at 920-21.

Mr. Lee has presented three separate claims, each of which are significantly likely to succeed on the merits. Because his petition presents important and complex issues and his claims have never received full and fair consideration, a stay of execution is necessary to allow proper development of the record so this Court can provide close consideration of his claims.

## B. Mr. Lee Will Suffer Irreparable Injury Without a Stay.

Mr. Lee would suffer irreparable injury if the Court were to deny his motion for a stay of execution. In the absence of a stay, he would face the irreversible taking of his life by the Government, without ever having had a meaningful opportunity to remedy grave constitutional violations that infected his trial, including those Mr. Lee alleges were perpetrated by the Government itself. *See, e.g., Wainright v. Booker*, 473 U.S. 935, 935 n.1 (1985) (Powell, J.,

7

concurring in decision to vacate stay of execution) ("The third requirement—that irreparable harm will result if a stay is not granted—is necessarily present in capital cases."); *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979) (granting stay of execution in light of the "obviously irreversible nature of the death penalty"); *Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995) (in acknowledging that "[t]here can be no doubt that a defendant facing the death penalty at the hands of the state faces irreparable injury," court notes importance of "substantial grounds" upon which relief may be granted). Mr. Lee's harm is thus imminent and would be beyond remediation if a stay did not issue.

### C.  The Balance of Harms Weighs in Mr. Lee's Favor.

On the other hand, the Government's interest in carrying out the execution of Mr. Lee on December 9, 2019, before he has a fair opportunity for judicial review of the merits of his claimed constitutional violations, does not, as explained below, constitute "substantial harm."

As an initial matter it should be noted that Mr. Lee is not requesting a permanent injunction. *See, e.g. Harris*, 323 F. Supp. 2d at 809 (finding "little potential for injury" as a result of a delayed execution date). He is merely requesting that the Court stay his execution so that he may receive one full and fair consideration of the substantial claims he has alleged.

Moreover, Mr. Lee has diligently pursued relief for the alleged constitutional violations every step of the way in the Arkansas district court, Eighth Circuit, and in the U.S. Supreme Court only to be stymied by the structural problems of the § 2255 statute and the ongoing misconduct of the Government. He filed his motion pursuant to Fed. R. Civ. P. 60(b) raising the PCL-R issue on September 27, 2013, within months of *Trevino* being decided, and while his petition for writ of *certiorari* from the denial of his initial § 2255 motion was still pending in the Supreme Court. *See* Doc. 1230; *see also*, *Lee v. United States*, 135 S.Ct. 72 (2014) (Mem.)

(denying petition October 6, 2014). When undersigned were appointed in August 2014[2], they undertook review of the voluminous trial record—this was a complex case brought under the Racketeering Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1961-1968, involving co-defendants and co-conspirators, and investigation by multiple state and federal law enforcement agencies—and conducted their own investigation; and, as soon as practically possible, timely filed a motion pursuant to § 2255 raising the issues stemming from the Wavra matter. *See* Doc. 1297. In the district court and on appeal, Mr. Lee attempted—unsuccessfully—to utilize the § 2255 vehicle to vindicate his rights.

Throughout the course of this prior litigation, the Government, with apparently little sense of urgency, took several filing extensions and had no opposition to Mr. Lee's requests for additional time to file pleadings,[3] including nine lengthy extensions in the Supreme Court before it responded to his petition for writ of *certiorari* seeking review of the denial of his 60(b) motion.[4]

While he was in the process of appealing the denial of his second-in-time § 2255 motion, the U.S. Department of Justice, on July 25, 2019, then set an execution date for Mr. Lee and four other men under a new execution protocol, with Mr. Lee's scheduled first.[5] Mr. Lee had no

---

[2] *See United States v. Lee*, No. 14-2853 (8th Cir. Aug. 7. 2014) (Order Appointing Counsel).

[3] *See e.g.,* Doc. 1234 (order granting Government request for extension); Doc. 1238 (order granting Lee's unopposed motion for extension); Doc. 1302 (order granting Government request for extension); Doc. 1306 (order granting Government request for extension); Doc. 1311 (order granting Lee's unopposed motion for extension); *see also United States v. Lee*, No. 14-2853 (8th Cir.) (9/10/14, 10/14/14, 1/15/15, 8/12/15, 9/10/15 orders granting Lee's unopposed motion for extensions); *id.* (12/9/14 order granting Government extension).

[4] The *cert* petition was filed in the Supreme Court on April 13, 2016. The Government's Brief in Opposition was not filed until March 13, 2017. *See Lee v. United States*, No. 15-8942.

[5] *See* Press Release, U.S. Department of Justice, Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019), available at https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse (last visited November 8, 2019);

9

reason to anticipate this development. These actions were especially surprising because the DOJ had been, for more than ten years, engaged in a lawsuit in a district court in the District of Columbia brought by several men under federal death sentence challenging the federal lethal injection protocol.[6] It had, for eight years, been providing regular joint status updates regarding the Federal Bureau of Prisons (BOP)'s execution protocol and assuring the D.C. District Court judge that the DOJ was still in the process of creating a new protocol.[7] Rather than announcing the new protocol in the lethal injection litigation and defending it in the ongoing and transparent process in federal court in Washington, D.C., the DOJ issued a press release simultaneously announcing a new protocol and setting execution dates for five individuals, including Mr. Lee, who were not party to that ongoing litigation. As noted previously, Mr. Lee would be the first individual executed by the Government in more than sixteen years.

The Government cannot now credibly claim substantial harm will be done if the Court stays Mr. Lee's December 9th execution date to finally allow consideration of his claims. This is not an eleventh-hour stay request like those that have been denied due to a prisoner's delay. *See, e.g.*, *Hill*, 547 U.S. at 584 ("A court considering a stay must also apply a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.") (internal quotation marks and citations omitted). Rather, it is a case with substantial grounds for relief alleged, and compelling equities at its core; when the Government's lack of harm is compared to the

---

see also Notice of Adoption of Revised Protocol, *Roane v. Barr*, Civ. No. 05-2337,  (D. D.C. July 25, 2019) (Doc. No. 385) (notifying plaintiffs in ongoing litigation challenging federal lethal injection protocol of revised protocol).

[6] *See, generally, Roane v. Barr*, Civ. No. 05-2337, (D. D.C. July 25, 2019).

[7] *See, e.g.,* Parties' Joint Status Report, *Roane v. Barr*, Civ. No. 05-2337 (D.D.C. May 1, 2019) (Doc. No. 383).

irreparable injury that Mr. Lee would suffer in the absence of a stay, the balance of hardships tips decidedly in his favor and strongly supports the issuance of the stay of execution.

### D. The Public Interest Weighs in Favor of a Stay.

The public interest also weighs in favor of a stay of Mr. Lee's execution. There is no public interest in an unconstitutional execution. A stay would, moreover, vindicate the public's interest in making sure that the federal government does not violate the U.S. Constitution. To the extent that the Government asserts that the public has an interest in executions being carried out, as noted above, Mr. Lee seeks a stay to have a meaningful opportunity to have the Court consider the merits of his claims and a delay of the execution for this purpose would not disserve the public interest. *See e.g., Harris*, 323 F. Supp. 2d at 810; *see also Cooey v. Taft*, 430 F.Supp. 2d 702, 708 (S.D. Ohio 2006) ("the public interest only is served by enforcing constitutional rights and by the prompt and accurate resolution of disputes concerning those constitutional rights. By comparison, the public interest has never been and could never be served by rushing to judgment at the expense of a condemned inmate's constitutional rights.") Here, the public interest would not be served by rushing to judgment prior to December 9, 2019, where such extraordinary circumstances and equities exist.

Finally, this is a case where the Government's assertion of the public interest is unusually weak. The Arkansas officials who tried the case and the presiding judge who sentenced Mr. Lee to death oppose Mr. Lee's execution. *See* Pet. 1 at 1. Notably, the lead prosecutor, Dan Stripling, remains convinced that the disparate sentencing outcomes in this case—Mr. Lee's death sentence, compared with his far more culpable co-defendant's life-without-parole sentence— were the result of arbitrary factors given the evidence against the two men.[8]

---

[8] Attachment A. 2014.10.28 Letter of AUSA Dan Stripling to AG Eric Holder and US Atty Christopher Thyer.

Most importantly, despite the Attorney General's announcement that these executions were set to provide justice for the victims,[9] the victims' family here also opposes this execution. The victims' family members have made their views known directly in various submissions to the Government.[10] The leader of the family, mother to one of the victims, grandmother to another, and mother-in-law of the third – has conveyed her wishes that Mr. Lee's execution not move forward, through a video statement submitted to the Administration.[11] Two other close family members have written letters to the Administration stating their belief that Mr. Lee's trial proceeding was unfair and that his execution would be unjust.[12] Under these circumstances, pressing urgently toward a December 9th execution date cannot be said to be strongly in the public's interest.

## CONCLUSION

Mr. Lee has demonstrated that all of the relevant factors weigh heavily in favor of this Court issuing a stay of execution so that Mr. Lee may vindicate his rights and have the merits of his substantial grounds for relief properly considered.

---

[9] *See* Press Release, U.S. Department of Justice, Federal Government to Resume Capital Punishment After Nearly Two Decade Lapse (July 25, 2019), available at https://www.justice.gov/opa/pr/federal-government-resume-capital-punishment-after-nearly-two-decade-lapse (last visited November 8, 2019).

[10] The family members were also quoted in a recent article in the *The New York Times*. (*See* Campbell Robertson, "She Doesn't Want Her Daughter's Killer to Be Put To Death. Should the Government Listen?," https://www.nytimes.com/2019/10/29/us/arkansas-federal-death-penalty.html (last visited on November 8, 2019).

[11] *See* https://vimeo.com/359661291 (last visited November 8, 2019).

[12] Attachment B, 2019.09.06 Letter to President Donald J. Trump; Attachment C, 2019.09.07 Letter to President Donald J. Trump.

## REQUEST FOR RELIEF

For the foregoing reasons and those explained in his § 2241 petition, Mr. Lee respectfully requests that the Court stay his execution pending its consideration of his claims.

Respectfully submitted,

\s\ Morris H. Moon                        \s\ George G. Kouros
Morris H. Moon                            George G. Kouros
Assistant Federal Public Defender         Assistant Federal Public Defender
Federal Capital Habeas Project            Federal Capital Habeas Project
6411 Ivy Lane, Suite 710                  6411 Ivy Lane, Suite 710
Greenbelt, MD 20770                       Greenbelt, MD 20770
(713) 880-3556                            (301) 821-0855
Morris_Moon@fd.org                        George_Kouros@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system on November 8, 2019. I certify that all the participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

/s/Morris H. Moon
MORRIS H. MOON
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

Counsel for Daniel Lewis Lee

14