**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

**DANIEL LEWIS LEE,**
            **Petitioner,**

**vs.**                                                                          **Case No. 2:19-cv-00468-JPH-DLP**

                                                                                 **CAPITAL CASE**
**WARDEN, USP-TERRE HAUTE**                        **EXECUTION SCHEDULED FOR**
**UNITED STATES OF AMERICA,**                       **DECEMBER 9, 2019**
            **Respondents.**

**MOTION FOR LEAVE TO CONDUCT DISCOVERY**
**AND INCORPORATED MEMORANDUM**

Comes now Daniel Lee, respectfully and through undersigned counsel, and moves this Honorable Court for leave to conduct discovery, pursuant to the Fourth, Fifth, Sixth, and Eighth Amendments, and Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), applicable to cases under 28 U.S.C. § 2241 by Rule 1(b) of the Habeas Rules,[1] so that Mr. Lee has a full and fair opportunity to develop and present facts in support of his petition for writ of habeas corpus and in order to ensure a fully developed factual record for judicial review of his claims for relief. Mr. Lee has been scheduled for execution on December 9, 2019 by the U.S. Department of Justice.

Mr. Lee's § 2241 petition (Dkt. 1)[2] sets forth specific allegations in support of his claims that he was deprived of a meaningful opportunity to vindicate his Sixth Amendment trial rights;

---

[1] *See e.g See Bowers v. United States Parole Com'n*, 760 F.3d 1177, 1183 n.8 (11th Cir. 2014); *Levi v. Holt*, 192 Fed. Appx. 158, 162 (3d Cir.2006); *Chaterjee v. United States Parole Com'n*, 731 F.Supp. 274, 275 (N.D. Ill. 1990).

[2] Petitioner Daniel Lee shall be referred to throughout this pleading as Mr. Lee. Respondents shall be referred to as the Government. Citations to the previously-filed Petition for Writ of Habeas Corpus (Dkt. 1) shall be designated at "Pet." Citations to the Government's Response in Opposition to Daniel

that the prosecution suppressed material information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and that the prosecution presented testimony it knew or should have known was false and misleading to jurors at Mr. Lee's sentencing in violation of *Napue v. Illinois*, 360 U.S. 264 (1959) and *Giglio v. United States*, 405 U.S. 150 (1972). His allegations, if fully developed, would entitle him to relief. Thus, there is good cause for his discovery requests. Reasons in support of his motion are set forth more fully in the following memorandum.

                                                    Respectfully submitted,

\s\ Morris H. Moon                          \s\ George G. Kouros
Morris H. Moon                              George G. Kouros
Assistant Federal Public Defender           Assistant Federal Public Defender
Federal Capital Habeas Project              Federal Capital Habeas Project
6411 Ivy Lane, Suite 710                    6411 Ivy Lane, Suite 710
Greenbelt, MD 20770                         Greenbelt, MD 20770
(713) 880-3556                              (301) 821-0855
Morris_Moon@fd.org                          George_Kouros@fd.org

Dated: November 12, 2019

---

Lewis Lee's Petition for a Writ of Habeas Corpus (Dkt. 14) shall be designated as "GR." Citations to attached exhibits shall be designated as "Exh."

## <u>MEMORANDUM</u>

Mr. Lee has presented this Court with three habeas claims raising serious and concerning allegations about the way the Government secured his death sentence. The Government's response to Mr. Lee's claims demonstrates that (1) none of Mr. Lee's allegations are conclusively refuted by the existing record, and (2) further fact-development is necessary. In fact, the Government acknowledged that Mr. Lee's allegations were sufficiently plausible that his Petition spurred it to conduct a preliminary investigation of its own. *See* GR at 69 ("The government has attempted to ascertain what happened at the preliminary hearing but as of yet has been unable to find anything that sheds light on Lee's allegations); *id*. at 74 n.11 (admitting it "has attempted to ascertain additional information about the [Oklahoma] hearing but thus far has been unsuccessful."). Its response makes clear that there are genuine issues of material fact that are in dispute and in need of further fact development.[3] Thus, discovery is warranted.

## I.

This Court retains broad discretion to permit discovery in habeas proceedings. *See Boumediene v. Bush*, 553 U.S. 723, 774 (2008) (court draws its power to allow discovery from the All Writs Act, 28 U.S.C. § 1651) (citing *Harris v. Nelson*, 394 U.S. 286 (1969)); *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976) ("Through the power granted by the All Writs Act, district courts may order such discovery…as they deem necessary to determine the facts adequately."); *Ivey v. Harney*, 47 F.3d 181, 184 (7th Cir. 1995) ("courts may provide by local rule and by order in individual cases for procedures when the national rules are silent"). The Court's discretion encompasses its ability to design procedures to determine threshold,

---

[3] The Government also makes bald factual assertions not supported by the record and that have yet to be tested by discovery. *See id*. at 74 ("the prosecutors at Lee's trial plainly believed that Lee pleaded guilty to robbery as a result of a beneficial plea agreement"); *id*. ("As far as the government is currently aware, there is no basis to dispute the veracity of [the Government's jury argument].")

preliminary or procedural questions or resolve factual disputes relating to the cognizability of claims. *See, e.g., Webster v. Daniels*, 784 F.3d 1123, 1145-46 (7th Cir. 2015) (remanding for evidentiary hearing to determine fact issues establishing whether § 2241 jurisdiction existed, prior to any consideration of merits).

For discovery purposes, Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules") has been made applicable to cases under § 2241 pursuant to Rule 1(b) of the Habeas Rules. The rule provides that a court may "for good cause" authorize a party to conduct discovery under the Federal Rules of Civil Procedure. "Good cause" is shown "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is[ ] entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 909 (1997).

"Good cause" is a relatively low standard for a petitioner seeking discovery to satisfy. *See Bracy*, 520 U.S. at 905, 908 (noting capital habeas petitioner's theory of claim for relief was "quite speculative" and "only a theory at this point"; proper focus of discovery request was not how successful the discovery request would be, but merely whether the sought-after-facts, if true, would help establish claim for relief). If the petitioner has properly alleged a cognizable claim and requested probative evidence, he has shown "good cause" for discovery. *See, e.g., Murphy v. Johnson*, 205 F.3d 809, 813-814 (5th Cir. 2000) ("where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he [is] entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry") (internal quotation marks and citation omitted). The heightened need for reliability in capital cases should, moreover, inform a court's

4

exercise of its discretion in permitting discovery. *See Woodson v. North Carolina,* 428 U.S. 280, 305 (1976).[4]

## II.

**A.      Request in Support of Mr. Lee's Claim that his Death Sentence was Based Upon a Sixth Amendment Violation Which Evaded Review Under 28 U.S.C. § 2255.**

Mr. Lee has alleged that trial counsel unreasonably failed to raise an available challenge to the Psychopathy Checklist (PCL-R) that would in all probability have resulted in its never having been presented to the jury; but for trial counsel's error, there is a reasonable probability that the outcome of the sentencing proceeding would have been different. Pet. at 6-18. Mr. Lee supported his claim with a declaration that Government trial expert Dr. Thomas Ryan submitted in another post-conviction case litigated shortly after Mr. Lee's that addressed the same issue.

In response, the Government suggests that even if defense counsel had made the proper challenge, evidence of the PCL-R would still have been presented to the jury. GR at 59. This directly contradicts Mr. Lee's assertion that, had trial counsel properly challenged Dr. Ryan, the jury would not have heard this evidence. Because Mr. Lee has pleaded specific facts supporting his allegation, and the Government's response has created facts in controversy, discovery is now appropriate.

This request is also supported by the Government's recitation of the Arkansas district court's mistaken timeline of Dr. Ryan's testimony. In its response, the Government noted that

---

[4] *See also Wilson v. Butler,* 825 F.2d 879, 883 (5th Cir. 1987) ("[I]f death is involved, the petitioner should be presented every opportunity possible, consistent with the interests of the state, to present facts relevant to his constitutional claims."); *Payne v. Bell*, 89 F. Supp. 2d 967, 971 (W.D. Tenn. 2000) ("more liberal discovery is appropriate in capital cases where the stakes for prisoners are so high"); *United States ex rel. Brisbon v. Gilmore*, No. 95 C 5033, 1997 U.S. Dist. LEXIS 8314, at *8 (N.D. Ill. June 10, 1997) ("The Court agrees that, in light of the heavy burden Brisbon bears in petitioning for habeas relief from his death sentence, potentially corroborating evidence constitutes good cause for limited discovery").

Dr. Ryan's recantation in the other capital case was issued in the Spring of 2000 and Mr. Lee's trial was in 1999. GR at 46-47. The Government repeats the previous court's error suggesting that Dr. Ryan's rejection of the PCL-R could not have assisted Mr. Lee's counsel because it happened too late. The case in question in Dr. Ryan's declaration was actually a 1998 trial and thus there is no temporal problem with Mr. Lee's assertions. However, because the prior record is in error on this issue, and because the Government continues to rely on the prior courts' description, Mr. Lee is entitled to discovery on this issue.

### 1. Mr. Lee requests a deposition of Dr. Ryan.

At this stage of litigation, similar to the movant in *Bracy*, Mr. Lee has met his pleading burden and established good cause for a deposition of Dr. Ryan. Mr. Lee has alleged the elements of his claim and made "specific allegations" supporting this discovery request. Mr. Lee's defense team has attempted to speak with Dr. Ryan about this case but Dr. Ryan declined to be interviewed about it. Dr. Ryan was a government witness and Mr. Lee has no ability to compel Dr. Ryan to speak with him absent this Court's assistance. A deposition of Dr. Ryan is therefore necessary to address the facts put in controversy by the Government's response.

### B. Discovery in Support of Mr. Lee's Claim that his Death Sentence was Obtained in Violation of *Brady v. Maryland* and *Napue v. Illinois*.

Mr. Lee has alleged that the Government failed to disclose material exculpatory and impeachment evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), that would have refuted its claim at sentencing that Mr. Lee escaped culpability in the murder of Joseph Wavra. In addition, Mr. Lee demonstrated that the prosecution also violated *Napue v. Illinois*, 360 U.S. 264 (1959), when it falsely told the jury that Mr. Lee was legally responsible for the murder of Joseph Wavra, and that he had gotten away with the crime when state prosecutors gave him a sweetheart plea "gift" to the less severe offense of robbery. Pet. at 41-56. In fact, Mr. Lee alleges

that the murder charge was dismissed pursuant to a judicial finding that the state's evidence was insufficient to establish even *probable cause* that Mr. Lee had committed the murder. *Id.* at 45-47.

Mr. Lee has pleaded specific allegations establishing that such evidence would have been favorable to him: it would have rebutted a predicate fact alleged as part of the future dangerousness aggravator—that Mr. Lee was responsible for the Wavra murder—and would have contradicted the Government's powerful penalty phase argument that Mr. Lee had "gotten away" with murder when he was allowed to plead guilty to robbery. *Id.* at 48-49.

Although the Government asks this Court to deny Mr. Lee's claims, its response actually underscores the need for further fact development. It concedes that Mr. Lee's claim is plausible,[5] and that the extant record is insufficient to conclusively rebut Mr. Lee's allegations. It variously establishes that Mr. Lee's claim is either not refuted by the existing record, or that there are genuine issues of material fact that are in dispute and therefore in need of further fact development. For example, the Government states that "it is not clear whether the [Oklahoma] court made that recommendation [to dismiss the murder charge] at the request or with the acquiescence of the prosecutors as a part of a negotiated plea disposition," GR at 74, and that it "has attempted to ascertain additional information about the hearing but thus far has been unsuccessful." *Id.* at 74 n.11.

The Government's response also puts at issue what the original prosecution team "plainly believed" regarding the preliminary hearing and the robbery plea at the time of Mr. Lee's capital trial. GR at 74. The extant record does not, as the Government claims, conclusively refute Mr. Lee's allegations about what the prosecution team knew or should have known. Indeed, the

---

[5] *See* GR at 69 ("To be clear, the fee application does not exclude the possibility that the hearing took place as Lee imagines."). Thus, even as it seeks facts on its own, the Government does not dispute that Mr. Lee's allegations regarding the Oklahoma hearing are plausible on the existing record.

7

Government simply asserts that the original prosecution team believed the murder charge was resolved because of a beneficial plea, and then states that it is not "currently aware" of any information to the contrary. *Id*. at 74. Clearly, such facts can only be established through the original members of the prosecution team itself, but tellingly, current counsel for the Government have not proffered any supporting facts in that regard.

There is no dispute that the Government's argument to the jury about Mr. Lee receiving a "gift" was false. There is much dispute about who knew what when. Because this information is only in the hands of various law enforcement and prosecution agencies, these issues can only be resolved with court-ordered discovery. Accordingly, Mr. Lee requests leave under the Federal Rules of Civil Procedure, per Habeas Rule 6(a), to compel discovery.

1. **Mr. Lee Requests an Order and/or Authority to Issue a Subpoena *Duces Tecum* Compelling Release of Files, Internal Notes, and Correspondence.**

Mr. Lee asks this Court to allow him authority to issue a subpoena *duces tecum* for files, internal notes and any other documents in the possession of Oklahoma City Police Department (OCPD) and the Oklahoma City District Attorney related to the murder of Mr. Wavra. The state charges against Mr. Lee were brought in juvenile court in 1990. Counsel for Mr. Lee have learned that juvenile court records in Oklahoma City from that time period are not maintained in a uniform manner. Counsel have also discovered that the electronic court record system currently used does not necessarily reflect the full contents of the original paper file. Because these court records are incomplete and some key documents possibly no longer exist, the files and records of the OCPD and the Oklahoma County District Attorney should be discoverable. These files should shed light on several of the key issues in dispute in Mr. Lee's case, including how and why Mr. Lee's murder charge was dismissed and subsequently resolved as a robbery, the substance and strength of the actual evidence against Danny Lee for murder, and the extent of

the OCPD and the Oklahoma County District Attorney's office's involvement in the investigation and preparation of Mr. Lee's capital trial in Arkansas.

Mr. Lee also requests that this Court issue an order compelling the Government to disclose any files, internal notes, communications, or any other documents related to the Wavra case investigation and trial preparation. These documents are similarly relevant and necessary for the same purpose.

This is not mere speculation on Mr. Lee's part. Clearly the Government investigated the Wavra incident prior to the Arkansas capital trial and, at a minimum, discussed the case with Oklahoma authorities and Oklahoma detectives who were subpoenaed to Mr. Lee's capital trial. The Government has never disclosed the full extent of this contact. However, documents that Mr. Lee recently received in response to an FBI FOIA request (and that do not appear to be in any discovery provided to the defense trial team) show that cooperation between the Oklahoma and federal authorities was more involved than the Government's reply suggests and that the federal prosecution team engaged in an intensive review and investigation of the Oklahoma case. For example, one recently obtained document shows that there were discussions between various Special Agents and a Supervisory Agent in Charge about travel to Oklahoma to "review and obtain all records relative to the 1990 murder in order to determine Lee's level of participation." Exh. A at 2. The document also notes that the FBI field office in Little Rock, Arkansas had an OCPD report about the Wavra investigation but FBI case agents contacted investigators and others and "determined other files and records pertaining to the incident are being maintained at the prosecutor's office and at the Oklahoma Department of Human Services, Juvenile Bureau, in Oklahoma City." *Id.*

It was clear from the record that the Government closely reviewed the state district attorney files: "a review was conducted of the prosecution file relative to the murder of JOSEPH JOHN WAVRA at the offices of the Oklahoma County District Attorney…" Exh. B. But other documents recently received via FOIA show that the Government had in its possession detailed notes from the state authorities. A document, for example, which appears to be handwritten notes made contemporaneously with Mr. Lee's cousin, David Patton's plea explains the circumstances of his plea and also comments on Mr. Lee's robbery plea. Although portions of the document are redacted, the document also appears to comment on the evidence and the reasons for pleading the case. Exh. C. This document demonstrates not only that the Oklahoma prosecution records capture detail which is likely directly relevant to the issues Mr. Lee has raised but also that the Government collected much more evidence from Oklahoma than its responsive pleading suggests. Discovery from the OCPD, Oklahoma County District Attorney, and the Government is warranted.

**2. Mr. Lee Requests Authority to Take the Depositions of Witnesses Necessary to Conclusively Prove His Claims for Relief.**

In addition to documentary evidence, several key witnesses have information relevant to the issues contested by the Government.

**a. Detectives Randall Yarbrough and Ron Mitchell.**

OCPD Detectives Randall Yarbrough and Ron Mitchell both have information relevant to Mr. Lee's claims. (Det. Yarbrough investigated the Wavra incident and testified for the Government at Mr. Lee's penalty phase proceeding; Det. Mitchell conducted Mr. Lee's interrogation in the Wavra murder investigation and testified at a hearing prior to Mr. Lee's penalty phase proceeding.) Mr. Lee has alleged that these detectives were aware that Mr. Lee's murder charge had been dismissed by an Oklahoma judge after a preliminary hearing, and that

this knowledge was either actively or constructively possessed by the federal prosecution team. This Court should allow limited depositions of these individuals.

### b. Case agents

Several case agents also have information and knowledge relevant to the contested issues in Mr. Lee's case. As noted above, special agents were involved with the investigation and review of documents in Oklahoma. One agent named in a document provided in discovery is James Schanandore. *See* Exh. B. Because the names of agents in other documents have been redacted, Mr. Lee is unable to provide this Court with a full list of names. However, this information is directly relevant to Mr. Lee's *Brady* and *Napue* claims and cannot be discovered without this Court's assistance. Mr. Lee requests this Court allow depositions of each FBI and/or ATF case agent who was involved in the investigation and review of the Wavra murder.

### c. Assistant United States Attorneys

Lastly, Mr. Lee requests depositions of the Assistant United States Attorneys who were involved with his capital trial. For obvious reasons, these witnesses also have information directly relevant to Mr. Lee's *Brady* and *Napue* claims. The Government raises controverted facts regarding what each individual member of the prosecution team knew or should have known given its efforts at collecting the state court Wavra records and coordinating with the two Oklahoma detectives to testify at Mr. Lee's capital trial about the Wavra murder. *See* GR at 75. Limited depositions of these witnesses are required to resolve the factual conflicts raised by Government.

## **CONCLUSION**

WHEREFORE, Daniel Lee respectfully requests that this Honorable Court grant the

foregoing Motion, and permit Mr. Lee leave to conduct discovery under the Federal Rules of

Civil Procedure, per Habeas Rule 6(a).

Respectfully submitted,

| | |
|---|---|
| \s\ Morris H. Moon | \s\ George G. Kouros |
| Morris H. Moon | George G. Kouros |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| Federal Capital Habeas Project | Federal Capital Habeas Project |
| 6411 Ivy Lane, Suite 710 | 6411 Ivy Lane, Suite 710 |
| Greenbelt, MD 20770 | Greenbelt, MD 20770 |
| (713) 880-3556 | (301) 821-0855 |
| Morris_Moon@fd.org | George_Kouros@fd.org |

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system on November 12, 2019. I certify that all the participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system

/s/Morris H. Moon
MORRIS H. MOON
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

Counsel for Daniel Lewis Lee