IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| DANIEL LEWIS LEE, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | No. 2:19-CV-00468-JPH-DLP |
| | ) | (Capital Case) |
| WARDEN USP TERRE HAUTE, | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondents. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DANIEL LEWIS
LEE'S MOTION FOR STAY OF EXECUTION**

The government submits this response to Daniel Lewis Lee's motion for

a stay of his execution pending the Court's adjudication of his petition for a

writ of habeas corpus under 28 U.S.C. § 2241. The Court should deny the

motion for the reasons stated below.

**BACKGROUND**

In 1999, petitioner Daniel Lewis Lee was convicted of three counts of

capital murder and was sentenced to death by a jury in the United States

District Court for the Eastern District of Arkansas. In the ensuing years, the

Arkansas district court and the United States Court of Appeals for the

Eighth Circuit repeatedly upheld Lee's conviction and sentence on direct

appeal and on collateral review under 28 U.S.C. § 2255. *See* Dkt. 14, at 3-6

1

(describing procedural history).[1] The Supreme Court also denied certiorari on multiple occasions. *Lee v. United States*, 137 S. Ct. 1577 (2017); *Lee v. United States*, 135 S. Ct. 72 (2014); *Lee v. United States*, 545 U.S. 1141 (2005); *Lee v. United States*, 537 U.S. 1000 (2002).

In July 2019, the United States set a date to carry out Lee's capital sentence, scheduling his execution for December 9, 2019. Approximately two months later, on September 26, 2019, Lee filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this Court—the district of his confinement—raising claims that he had asserted in prior filings in the Arkansas district court. Dkt. 1. Lee now requests a stay of his execution pending this Court's adjudication of the habeas petition. Dkt. 17.

Lee is not entitled to a stay under the applicable legal standard. The motion should be denied.

## APPLICABLE LEGAL STANDARD

A stay of execution is a form of equitable relief in which the standards for a preliminary injunction generally apply. *See Williams v. Chrans*, 50 F.3d 1358, 1360 (7th Cir. 1995). A capital prisoner seeking a stay of execution pending additional legal proceedings bears the burden of demonstrating (1) he will suffer irreparable harm if a stay is not granted; (2) he has a

---

[1] "Dkt." refers to docket entries in this case.

significant likelihood of success on the merits in the pending legal proceedings; and (3) the balance of equities (the harms to the prisoner and the government, as well as the interests of the public at large) weigh in favor of a stay. *Lambert v. Buss*, 498 F.3d 446, 447 (7th Cir. 2007); *cf. United States v. Holland*, 1 F.3d 454, 456 (7th Cir. 1993).

Some guidelines have developed in applying the relevant equitable rules in the particular context of an application for a stay of execution in a capital case. "[T]he issue of irreparable injury is taken as established in a capital case." *Chrans*, 50 F.3d at 1360. On the other hand, in balancing the equities, a court must recognize the government's "strong interest in proceeding with its judgment," and it must consider "the extent to which the inmate has delayed unnecessarily in bringing the claim." *Lambert*, 498 F.3d at 452 (quoting *Nelson v. Campbell*, 541 U.S. 637, 649-50 (2004)). Because the government has a "significant interest in enforcing its criminal judgments, there is a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay." *Id.* (quoting *Nelson*, 541 U.S. at 650). Accordingly, the Seventh Circuit has identified "two critical factors in evaluating whether a stay of execution should issue: (1) whether the inmate has delayed unnecessarily in bringing the claim; and (2) whether the inmate shows a significant probability of success on the merits." *Id.* at 451.

3

**ARGUMENT**

The two "critical factors" identified by the Seventh Circuit weigh against a stay in this case. Lee has not demonstrated a likelihood of success on the merits, let alone a strong likelihood. And he delayed unnecessarily in bringing his claims.

1.     The government has explained in detail the numerous grounds on which Lee's habeas petition plainly must be denied. *See* Dkt. 14, at 18-76. In short, not only does Lee fail to assert a meritorious ineffective-assistance claim or meritorious *Brady* and *Napue* claims, but he is statutorily barred from raising those claims in a habeas petition. *See* 28 U.S.C. § 2255(e). The government will not repeat that discussion at length here but emphasizes that the statutory bar plainly requires denial of Lee's habeas petition.

As described in more detail in the government's response to Lee's habeas petition, § 2255 provides that district courts "shall not . . . entertain[]" a federal prisoner's petition for a writ of habeas corpus except in cases where § 2255 was shown to be "inadequate or ineffective to test the legality of [the prisoner's] detention." 28 U.S.C. § 2255(e). Broadly speaking, the Seventh Circuit has determined that § 2255 may be inadequate or ineffective— potentially permitting a § 2241 habeas petition—when a federal prisoner relies on (1) an intervening judicial decision unavailable at the time of the prisoner's first § 2255 motion that demonstrates fundamental error in the

4

prisoner's conviction or sentence; or (2) newly discovered evidence demonstrating categorical ineligibility for the death penalty that existed at the time of the prisoner's trial but was unavailable despite diligence by the defense. *See* Dkt. 14, at 19-27,

Lee does not (and cannot) show that § 2255 was inadequate or ineffective to raise the ineffective-assistance and *Brady* and *Napue* claims asserted in his habeas petition. As for the ineffective-assistance claim, Lee concedes that all of the law and facts required to raise that claim were available at the time of his first § 2255 motion. According to Lee, the lawyers who represented him in those § 2255 proceedings could have and should have raised the ineffective-assistance claim in his first § 2255 motion but failed to do so as a result of negligence. Attorney negligence, however, does not make § 2255 inadequate or ineffective. "[W]here a prisoner had an opportunity to present his claim properly in his first § 2255 petition, but failed to do so, any 'ineffectiveness' . . . is due to him and not to § 2255." *United States v. Barrett*, 178 F.3d 34, 53 (1st Cir. 1999).

Section 2255 similarly was not inadequate or ineffective to raise the *Brady* and *Napue* claims Lee asserts in his habeas petition. The newly discovered evidence that Lee relies upon in support of those claims—which he derives from publicly accessible court documents—was readily available to Lee at the time of his trial and first § 2255 motion. *See* Dkt. 14, at 36, 65-68.

As Lee himself has acknowledged elsewhere, that information "was available to, yet never pursued by, [his] trial or postconviction counsel." Letter from Ruth E. Friedman to Attorney General Eric Holder (Nov. 4, 2014) (on file with government). Section 2255 was not inadequate or ineffective merely because Lee failed to act with diligence to obtain publicly-available information that he now alleges would support *Brady* and *Napue* claims.

In short, Lee identifies no structural problem in § 2255 that prevented him from raising in his first § 2255 motion the ineffective-assistance claim and the *Brady* and *Napue* claims that he now asserts in his habeas petition. By his own account, Lee's failure or inability to raise those claims in his first § 2255 motion (or earlier) derived from the negligence or lack of diligence by his own lawyers. Section 2255 is not inadequate or ineffective, however, in those circumstances, and Lee provides no reason to conclude otherwise. On the basis of this statutory bar alone, Lee has not shown a likelihood of success that would justify a stay of his execution.

2.     Lee also delayed unnecessarily in bringing the claims he now asserts in his habeas petition. Lee had ample opportunity to assert those claims earlier but failed to do so.

First, Lee delayed filing a habeas petition raising the ineffective-assistance claim he now asserts. To be sure, Lee asserted the claim in the Eastern District of Arkansas as early as 2008. *See United States v. Lee*, No.

6

97-CR-243, 2010 WL 5347174, at *5-*6 (E.D. Ark. Dec. 22, 2010). But Lee knew that he was unable to raise that claim in a § 2255 motion in the Arkansas district court as of April 7, 2017, after the Supreme Court denied certiorari in the case in which he attempted to assert that claim in a motion under Federal Rule of Civil Procedure 60(b). *See Lee v. United States*, 137 S. Ct. 1577 (2017). After the Supreme Court denied certiorari, Lee could have filed a § 2241 habeas petition in this Court raising the identical arguments he asserts in the petition in this case. At that point, all of the facts and law Lee now asserts were available to him. Yet Lee waited almost two-and-a-half years and only filed his petition after the United States scheduled a date for his execution. Lee provides no explanation for this unnecessary delay.

Second, Lee delayed in asserting the *Brady* and *Napue* claims raised in his habeas petition. Lee was aware of the information he relies on to assert those claims no later than November 4, 2014. *See* Letter from Ruth E. Friedman to Attorney General Eric Holder (Nov. 4, 2014) (on file with government). Yet Lee raised those claims for the first time almost four years later, in a § 2255 motion in the Eastern District of Arkansas filed on September 10, 2018. Thus, although Lee now asserts that he pursued the *Brady* and *Napue* claims "as soon as practically possible" and in a "timely filed" § 2255 motion, Dkt. 17, at 9, the facts demonstrate otherwise. Lee

7

provides no explanation for why he unnecessarily waited almost four years to first raise these *Brady* and *Napue* claims.

Had Lee pursued with sufficient diligence the ineffective-assistance claim and the *Brady* and *Napue* claims asserted in his habeas petition, it is likely the claims could have been adjudicated well before there was a need to seek a stay of his execution. Courts must take into account the potential for "dilatory" tactics when evaluating the propriety of a stay of execution. *Buss*, 498 F.3d at 452. Lee's delay, together with his failure to demonstrate a likelihood of success on the merits, weighs against a stay in this case.

## CONCLUSION

For the foregoing reasons, this Court should deny Lee's stay motion.

Respectfully submitted,

JOSH J. MINKLER
United States Attorney
Southern District of Indiana

MICHAEL GORDON
Assistant United States Attorney
Eastern District of Arkansas

BRIAN A. BENCZKOWSKI
Assistant Attorney General

MATTHEW S. MINER
Deputy Assistant Attorney General

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W., Rm. 1260
Washington, D.C. 20530
(202) 307-3766
john.pellettieri@usdoj.gov

November 19, 2019

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system on November 19, 2019. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/John M. Pellettieri
JOHN M. PELLETTIERI
Attorney, Appellate Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Rm. 1260
Washington, D.C. 20530
(202) 307-3766