IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

**DANIEL LEWIS LEE,**

**Petitioner**

No. 2:19-cv-00468-JPH-DLP

**v.**

**CAPITAL CASE**

**WARDEN USP TERRE HAUTE**

**Respondent**

**PETITIONER'S MOTION TO ALTER OR AMEND PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 59(e)**

Movant, Daniel Lee, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure,
respectfully requests that this Court alter or amend its March 20, 2020 order denying relief (Dkt.
35). Respectfully, this Court's reliance on the Seventh Circuit's stay decision to foreclose all
development or consideration of his strong claims was erroneous; there are factual errors in the
Court's order; and one legal claim was omitted entirely. Any one of these mistakes is alone
grounds for reconsidering the judgment.

The district court has broad authority to "rectify its own mistakes in the period
immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment
Security,* 455 U.S. 445, 450 (1982). A Rule 59(e) motion can be used to correct manifest errors
of law or fact. *Duran v. Town of Cicero, Ill.,* 653 F.3d 632, 642 (7th Cir. 2011). Such error can
be shown "when the district court commits a wholesale disregard, misapplication, or failure to

recognize controlling precedent." *Stragpede v. City of Chicago,* 865 F.3d 861, 868 (7th Cir. 2017) (quoting *Burritt v. Ditlefsen,* 807 F.3d 239, 253 (7th Cir. 2015)). Moreover, arguments that a court "misunderstood the movant's position are properly brought under Rule 59(e)[.]" *In re Ebel*, 120 F.3d 270, 1997 WL 428574, at *6 (10th Cir. July 30, 1997) (citing *Van Skivver v. United States*, 952 F.2d 1241, 1244 (10th Cir. 1991)).

I.   **THIS COURT'S RELIANCE ON THE SEVENTH CIRCUIT'S OPINION VACATING THE STAY OF EXECUTION TO DENY MR. LEE'S HABEAS PETITION ON THE MERITS MISAPPLIED THE GOVERNING STANDARDS.**

In its short opinion vacating a stay of execution, a panel of the Seventh Circuit held that Mr. Lee had failed to make the "'strong showing' of probable success on the merits" necessary to enjoin the then-scheduled execution. *Lee v. Watson*, No. 19-3399, 2019 WL 6718924 at *1 (7th Cir. Dec. 6, 2019). The panel observed that claims like Mr. Lee's "are regularly made and resolved under § 2255" and, notably, that this Court had not explained why there was a "significant possibility" that a "statement made on the record by a judge decades ago and available from that state court" could be "newly discovered" for purposes of § 2241. *Id.* The panel did not address Mr. Lee's other claims because those had been explicitly reserved by this Court's stay order. *See* Dkt. 27 at 2 n.1.

Respectfully, it appears that this Court subsequently construed the panel's decision vacating the stay as a wholesale rejection of the claims before this Court. Even while noting that "the Seventh Circuit's order in *Lee* did not hold that Mr. Lee's due process claims do not meet the Savings Clause" this Court nevertheless read "the Seventh Circuit's decision in *Lee* as having considered and rejected the several reasons cited by this Court *for granting the stay*" as a rejection of Mr. Lee's § 2241 claims themselves. Dkt. 35 at 7 (emphasis added). This Court also

2

concluded that the circuit opinion must have rejected Mr. Lee's discovery requests, *id.* at 7 n.4, as well as any other support for Mr. Lee's arguments. *Id.* This is a clear misapplication of law.

Federal courts have long recognized that the grant or denial of a preliminary injunction is not equivalent to consideration of the underlying claims and is not a substitute for a full and final determination of the claims presented. Merely because one of the factors for a stay of execution is the "likelihood of success on the merits" does not mean that the circuit opinion determined the underlying merits. As the Supreme Court has held "[t]his reasoning fails…because it improperly equates 'likelihood of success' with 'success' and what is more important, because it ignores the significant procedural differences between preliminary and permanent injunctions." *University of Texas v. Camenisch*, 451 U.S. 390, 394 (1981).

A stay of execution, like a preliminary injunction, is a way to maintain the status quo until the merits of a case can be reached. "The propriety of preliminary relief and resolution of the merits are of course significantly different issues." *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011) (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 721 n.10 (2007)). The two processes must also not be confused because "[g]iven the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete…" *Caminisch*, 451 U.S. at 395. Indeed, the findings of fact and conclusions of law made by a court at the preliminary-injunction stage "are not binding at trial on the merits." *Id.*

As this Court explicitly noted, the "Seventh Circuit's order in *Lee* did not hold that Mr. Lee's due process claims do not meet the Savings Clause…" Dkt. 35 at 7. Thus, even on its face, the circuit court order did not resolve the issues before this Court. More importantly however,

the process by which these decisions were issued demonstrates the informality and lack of completeness decried by the Supreme Court.

First, it should be noted that Mr. Lee had no pending request for a stay when this Court *sua sponte* issued its order enjoining his execution. Mr. Lee's execution had already been enjoined in a separate proceeding by the United States Court of Appeals for the District of Columbia Circuit and he had withdrawn his request for a stay in this Court. After this Court *sua sponte* issued its order, the Government appealed the grant of the stay, filing a pleading in the Seventh Circuit Court of Appeals on the morning of December 6, 2019. The Seventh Circuit allowed Mr. Lee's counsel, who were engaged in other litigation simultaneously, only five and a half hours to respond and rejected a request for any additional time. It issued an opinion approximately two hours later. The whole appeal took a mere eight hours. Mr. Lee's § 2241 claims – alleging concealment of facts negating a key basis for his sentence of death -- should not be resolved by adopting a ruling based on a non-applicable standard in a preliminary proceeding that is no substitute for full merits review.

Second, the law is clear that the issues to be resolved in stay litigation are not the same as those necessary to resolve the underlying lawsuit. *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 782 (7th Cir. 2011). Because the issuance of a stay became moot when Mr. Lee's execution date expired, this Court must review and decide the claims and motion before it under the appropriate governing rules and standards. The preliminary injunction litigation queried whether Mr. Lee was entitled to an order maintaining the status quo so he could develop the facts necessary to prove his claims in this Court. The circuit panel believed he was not. That decision, balancing the interests of the parties, including the public, did not replace this Court's decision making on the separate issues before it. *See e.g. West Virginia Ass'n of Community Health*

4

*Centers, Inc. v. Heckler,* 734 F.2d 1570, 1578-79 (D.C. Cir. 1984) (recognizing difference between denial of preliminary injunction and merits inquiry and remanding because once a preliminary injunction is no longer necessary, stay litigation is an "inappropriate setting" to reach merits). Mr. Lee no longer requires a stay for this Court to decide the issues before it, and this Court cannot simply accept the circuit court's opinion as a blanket rejection of his § 2241 petition. As in *Caminisch,* Mr. Lee's injunction litigation was not based on the merits of the case but rather on the balance of the stay factors: "[w]hile it is true that some of the Court of Appeals' language suggests a conclusion that [respondent] would win on the merits, the court certainly did not hold that the standards for summary judgment had been met." 451 U.S. at 398. Respectfully, this Court's order erroneously equated "likelihood of success" with "success" and ruling as if a summary judgment motion were before it, improperly short-circuited consideration of the issues before it.

Even though the circuit panel found an insufficient showing of likelihood of success, Mr. Lee is still entitled to full process and actual review of his case in this Court. Because a stay is no longer necessary to permit habeas review, this Court must address Mr. Lee's habeas petition as it would any other. It would be error to deny a habeas petition based only on a court's belief that the likelihood of success is slim; the court must review the petition in the light most favorable to petitioner, determine whether discovery is appropriate, allow expansion of the record, and determine whether to hold a hearing. Different legal standards apply to each of these steps and a court must engage in each independently. Even a claim that appears unlikely to succeed as pled is still entitled to further development unless the allegations are "palpably incredible" or "patently frivolous or false." *Blackledge v. Allison¸* 431 U.S. 63, 76 (1977). Mr. Lee's claims are neither. Indeed, this Court already found that further factual development was necessary to

determine whether Mr. Lee is entitled to habeas relief and whether he could meet § 2241. *See* Dkt. 27 at 2, 18, 20. Nothing in the panel's opinion contradicts these findings. In fact, the "Seventh Circuit did not hold that Mr. Lee's due process claims do not meet the Savings Clause." Dkt. 35 at 7.

Adopting the panel's reasoning about a preliminary injunction and treating it as law of the case not only contravenes clear Supreme Court precedent but is also unfair to Mr. Lee. This is particularly true where, as here, the ruling that set the stay litigation in motion and led to the panel decision was issued *sua sponte* by this Court. Because the Court's ruling was *sua sponte* and the Government immediately appealed, Mr. Lee's only opportunity for briefing the relevant legal, factual and procedural issues was limited to a five-and-a-half-hour window. The appellate court's cursory review of his case (necessitated by a preliminary injunction which is no longer at issue) cannot substitute for the actual proceedings on the merits to which Mr. Lee is entitled. *See Proimos v. Fair Automotive Repair, Inc.,* 808 F.2d 1273, 1277 (7th Cir. 1987) (vacating denial of relief where district court treated denial of preliminary injunction as a determination of the merits without, among other things, factual development).

## II.      THIS COURT ERRED IN DENYING MR. LEE'S REQUEST FOR DISCOVERY BASED ON THE PANEL'S PRELIMINARY INJUNCTION ORDER.

This Court's order erroneously rejected Mr. Lee's discovery requests by improperly conflating the stay standard with the proper standard for reviewing his habeas petition. The Court held that it had "reasoned that Mr. Lee had shown that discovery might uncover additional evidence to support his position that his due process claims meet the Savings Clause and have merit" but that the circuit panel "rejected this premise." Dkt. 35 at 7 n.4. This is incorrect and constitutes manifest error because the circuit court made no such ruling. Merely because the

standard for a preliminary injunction was not met, it does not follow that the circuit court's

decision resolved the merits of the case let alone pending discovery requests. As discussed *supra*,

it is clear error to equate "likelihood of success" with "success." As the Supreme Court

explained, this is because at issue in stay litigation is whether an injunction is necessary to

preserve the parties' relative positions prior to trial. *See Camenisch*, *supra*. When a preliminary

injunction is no longer necessary, as in Mr. Lee's case, the "likelihood of success" standard has

no relevance and this Court must resolve the issues before it under the standards appropriate to

the particular matter.

### A. Mr. Lee has met the habeas pleading requirements and his case cannot be rejected without considering his right to further fact development.

Here, Mr. Lee's discovery request must be examined under the correct and applicable

rules. Because a preliminary injunction is no longer required, this Court's task is to determine

(accepting Mr. Lee's factual allegations as true) whether he has adequately pled his claims, not

whether he has proven them. If Mr. Lee's claims meet the pleading requirements,[1] then he must

have the opportunity to utilize the available means of discovery and fact development in order to

prove them. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a district court acts "prematurely"

and "erroneously" when it dismisses a well-pleaded complaint, thereby "preclud[ing] any

opportunity for the plaintiffs" to establish their case "by subsequent proof"); *Am. Nurses' Ass'n

v. State of Illinois*, 783 F.2d 716, 723 (7th Cir.1986) (requiring plaintiff to plead unknown details

before discovery would improperly deny plaintiff the opportunity to prove claim); *Haroco, Inc.*

---

[1] This requirement has indisputably been met. Indeed, the Arkansas court already recognized that Mr. Lee's allegations were pled with enough specificity that, if true, they would establish meritorious *Brady* and *Napue* violations. *United States v. Lee*, No. 4:97-cr-00243 (E.D. Ark.), Dkt. No. 1313 at 14 (Feb. 26, 2019).

*v. Am. Nat'l Bank & Trust Co. of Chicago*, 747 F.2d 384, 404 (7th Cir.1984), *aff'd*, 473 U.S. 606 (1985).

### B.  Mr. Lee has established his right to discovery.

The correct legal standard for Mr. Lee's discovery request is found in *Bracy v. Gramley*, 520 U.S. 899 (1997), and Rule 6 of the Rules Governing Habeas Cases in the United States District Courts. It is error for this Court to deny a discovery request because the circuit court, in a different legal posture, found claims unlikely to succeed based on the undeveloped record presented for a preliminary injunction. It would be, in fact, extremely rare that any plaintiff could prevail on the merits of a case on the pleadings alone, absent further factual development.

Indeed, Mr. Lee has met the standard for discovery in his case. This Court already held, in its order granting a stay, that his § 2255 petition demonstrated a significant possibility that discoverable evidence would support his claim. Dkt. 27 at 13. This Court also correctly noted that "[w]hether Mr. Lee can ultimately prevail by demonstrating that the evidence exists and is newly discovered is a question for another day. But that determination, particularly in a death penalty case, should be made on a fully developed record." *Id*. Nothing in the circuit panel's decision about the propriety of a preliminary injunction alters this Court's holding. The circuit panel's holding that a stay could not be premised on this Court's belief that further factual development could possibly provide Mr. Lee relief is of no moment because it does not resolve the discovery issue before this Court. The circuit panel did not hold that it was impossible for Mr. Lee to prevail in this Court; it simply applied the preliminary injunction standard and stated that, *upon the record before it*, "the likelihood of success is slim." *Lee v. Watson,* 2019 WL 6718924, at *1.

As explained in his discovery request, Dkts. 18 & 26, Mr. Lee need only show that information he seeks *could* support his claims for relief; he does not have to make a prima facie showing that he likely will succeed in his case in order to establish good cause. As the Supreme Court has indicated, discovery is precisely what is needed in many instances to make the prima facie case petitioners are entitled to develop once they present well-pleaded claims based on specific allegations. *Bracy*, 520 U.S. at 905.

*Bracy* itself demonstrates the error in this Court's order. There, the Supreme Court unanimously reversed the lower court's denial of discovery, even though there was no showing that the petitioner would likely succeed on the merits. In fact, the Court found Bracy's argument that discovery would support his theory for relief admittedly "speculative" and "only a theory at this point." *Id*. at 905, 908. The Court noted, "*difficulties of proof aside*, there is no question that, if it could be proved . . . in petitioner's own case [those facts] would violate the Due Process Clause of the Fourteenth Amendment." *Id*. at 905 (emphasis added). The case law is clear that the burden of discovery in habeas is not difficult to meet: in a case like Mr. Lee's a petitioner must "only [ ] convince the court that he might be able to demonstrate a *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] violation if the facts are fully developed." *United States ex rel. Pecoraro v. Page*, 1998 WL 708856, at *3 (N.D. Ill. Sept. 30, 1998).

This Court has already determined that Mr. Lee's claims cannot be resolved on the existing record. *See* Dkt. 27 at 18 ("further factual development is necessary to resolve these issues"); *Id.* at 20 ("While further factual development is necessary for the Court to be able to determine whether Mr. Lee is entitled to habeas relief…"). The circuit panel's decision does not reject these findings. Nor does it preclude discovery in this case. The circuit court's application of the stay standard, considering only the record it had before it, led it to determine that Mr. Lee

had failed to make a "strong showing" of a "'significant possibility' that the supposedly newly discovered evidence is in fact newly discovered, as *Webster* uses that phrase." *Lee v. Watson,* 2019 WL 6718924, at \*1. Rather than rejecting discovery, this holding, in fact, highlights the need for it now. The panel did not find that it was impossible to meet the § 2241 standard; it held instead that Mr. Lee had failed to make a "strong showing" that he *already had* met that standard. As this Court previously ruled:

> [M]ore information is needed to determine whether the alleged *Brady* information was publicly available at the time. All the United States has offered is that the fee application "is listed on the public docket file." Whether or not this alone establishes that the fee application was publicly available at the time of Mr. Lee's trial, it says nothing about whether the other alleged *Brady* material was publicly available.

Dkt. 27 at 20 n. 7 (internal citations omitted).

Although the circuit court did not believe there was a "strong showing" that the *Webster* standard had been met, it did not hold that his *Brady* or *Napue v. Illinois,* 360 U.S. 264 (1959) claim could never satisfy § 2241. As this Court correctly noted, "[a]lthough the Seventh Circuit's order in *Lee* did not hold that Mr. Lee's due process claims do not meet the Savings Clause, it provided specific reasons why those claims were not likely to succeed." Dkt. 35 at 7. This does not preclude Mr. Lee's right to discovery (or to establish that he can in fact succeed on the merits). As the Supreme Court held in *Bracy,* discovery is still required even if "it may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain sufficient evidence to support [his claim]." 520 U.S. at 909. This Court erred when it rejected Mr. Lee's § 2241 petition without allowing the necessary fact development.

## III.   THIS COURT'S ADOPTION OF THE CIRCUIT PANEL'S STAY ORDER AS A MERITS RULING CREATED MULTIPLE OTHER ERRORS.

This Court's conflation of the stay standard and the proper standard for review of Mr. Lee's claims led to legal errors as well as a misunderstanding of the claims themselves.

A.  **This Court relied on the Seventh Circuit's mistaken view of Mr. Lee's claims.**

The circuit panel held that Mr. Lee failed to make a "strong showing" of a significant possibility that he could meet the § 2241 standards. *Lee v. Watson,* 2019 WL 6718924, at *1. According to the panel, this was because the "[t]he principal 'newly discovered' evidence on which Mr. Lee relies is a statement made on the record by a judge decades ago and available from that state court." *Id*. This framing of Mr. Lee's claim is simply incorrect. This description is likely a product of the "haste that is often necessary" in stay proceedings, *see Caminisch*, 451 U.S. at 395, as all briefing was completed and a decision rendered in a matter of hours. It could also have been because the Government has continually recited this straw man argument -- that Mr. Lee's claim is that the fee application is the *Brady* evidence. Despite the fact that this canard was explicitly rejected by Arkansas District Court Judge J. Leon Holmes, *see United States v. Lee*, No. 4:97-cr-00243 (E.D. Ark.), Dkt. 1313 at 10, the Government repeated it again in its pleadings before the Seventh Circuit which then apparently assumed it to be true. *See Lee v. Watson*, No. 19-3399, Dkt. 3 at 19 ("the fee application on which Lee now relies is a court document readily available to the public.").

This is not Mr. Lee's claim. Mr. Lee has asserted that the Government suppressed—*and continues to suppress*—evidence in its possession showing that it knew the details of the actual resolution of the Oklahoma case and that the details of that resolution contain exculpatory information. Neither Mr. Lee nor this Court yet has access to that information. The prosecution's files likely indicate why the Oklahoma court, considering the same evidence the federal

11

prosecutors presented in Arkansas, found it lacking. These facts are not in any public file; the Government is in sole possession of this evidence. If the prosecution file shows, for example, that the dismissal was based on a finding that the witnesses against him were not credible, this evidence would directly undermine the Government's death penalty case where some of the same witnesses testified to the same information.

The allegation that such evidence is in the possession of the Government is not mere speculation. Mr. Lee submitted documents showing that the Government and its agents traveled to Oklahoma to "review and obtain all records" relevant to the Wavra matter and to "determine Lee's level of participation." Dkt. 18 at Exh A. Mr. Lee also proffered pages from the Government file that include handwritten notes that appear to be from the Oklahoma prosecutors' files. *Id.* at Exh C. The Government never disclosed this information to Mr. Lee's defense team. Mr. Lee has also never been provided any information about which agents and prosecutors were involved in this investigation and state record review, nor how this information shaped the Government's false capital trial narrative. Mr. Lee has alleged—with sufficient specificity to allow further factual development—that this withheld information violates *Brady*.

If Mr. Lee's allegations are correct, this undisclosed information would certainly be newly discovered; indeed, Mr. Lee's lawyers have not yet discovered it despite requests to local authorities and the federal government as well as independent investigation. That is the basis of Mr. Lee's *Brady* claim, and it is premised on substantial evidence demonstrating that the Government did a full review of the Oklahoma case.[2] To suggest that Mr. Lee's claims can under

---

[2] It bears repeating that Mr. Lee's inability to make a "strong showing" before the circuit court is independent from his right to discovery on this issue. It is understandable that the circuit panel did not believe he could make a strong showing of a significant possibility that the evidence was "newly discovered" when: 1) it believed the evidence was limited to the public

no circumstances meet § 2241 because the evidence is not "newly discovered" is a misunderstanding of "movant's position [and is] properly brought under Rule 59(e)[.]" *In re Ebel*, 1997 WL 428574, at *6.

B. **This Court erred to the extent it relied on the Circuit Panel's legal theory of due diligence to dismiss Mr. Lee's *Brady* claim.**

In addition to misunderstanding of the nature of Mr. Lee's claim, the panel also misapplied the due diligence standard. The panel cited two cases, *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015), and *United States v. Shields*, 789 F.3d 733 (7th Cir. 2015), for the proposition that Mr. Lee's lawyers lacked due diligence. To the extent this Court adopted this reasoning, it is error.

The panel implied that Mr. Lee's claim must fail because the "statement" was available from the state court and was made in Mr. Lee's presence. *Lee v. Watson,* 2019 WL 6718924, at *1. The Court cited *Webster* for the proposition that "although [Mr. Lee] may not have understood its potential significance that is some distance from the information being concealed or unavailable." *Id*. This is, however, exactly the argument *Webster* rejected. The en banc court found the evidence there was unavailable even though it was a record of psychological testing and several evaluations administered to Webster himself. *Webster*, 784 at 1140. Rejecting the dissent's argument that Webster's claim failed because he had long known of his own testing and evaluations, the en banc court pointed out that there was no evidence that he "was capable of appreciating its significance." *Id.* The fact that Mr. Lee was the subject of the proceedings therefore cannot defeat his claim. The panel in fact explicitly held that the teenaged Mr. Lee, like

---

information, and 2) Mr. Lee has yet to be allowed discovery of the prosecution's files and information. As Mr. Lee pointed out in his discovery request, the Government clearly reviewed the files of the Oklahoma state prosecution team. Discovery of that file could very likely resolve this issue.

Webster, "may not have understood its potential significance." *Lee v. Watson,* 2019 WL 6718924, at *1.

*Shields* likewise does not resolve this case. Unlike Mr. Lee, the defendant there had, in fact, obtained the documents prior to the end of trial. 789 F.3d at 747. Moreover, the court found Mr. Shields' broader *Brady* claim to be "nothing but speculation" and faulted counsel for failing to request *in camera* review of the documents. *Id.* at 747-48. In contrast, Mr. Lee discovered the relevant document only after his § 2255 proceedings were already completed and as this Court has already held, "more information is needed to determine whether the alleged *Brady* information was publicly available at the time." Dkt. 27 at 20 n.7. Furthermore, as discussed above, his *Brady* claim is not based on the fee application; nor has he waived or forfeited any of his rights, unlike the *Shields* defendant. In fact, Mr. Lee has been asking for any *Brady* evidence repeatedly since before trial and has always been assured by the Government that all such evidence has been disclosed. In fact, after a pretrial conference where the prosecution represented that the "bulk" of the *Brady* material had already been disclosed to the defense, *United States v. Kehoe et al.*, No. 4:97-cr-00243 (E.D. Ark.), April 9, 1998, Tr. at 32, the Court entered an order dismissing Mr. Lee's *Brady* motion as moot "[f]or the reasons set forth on the record and in open court" at the hearing, while also directing the Government to provide defense counsel with any discovery to which Mr. Lee was entitled "on a continuing basis as it is received." *Id.*, Dkt. 145 at 1, 3.  At no point did the Government reveal any of the facts at issue here.

Moreover, the Supreme Court has explicitly rejected the notion that defense counsel's failure to discover exculpatory information relieves the prosecution of its constitutional duty of disclosure. *See Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("A rule thus declaring 'prosecutor

14

may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."). *See also Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 291 (3d Cir. 2016) ("[T]he concept of 'due diligence' plays no role in the *Brady* analysis."); *Amado v. Gonzalez*, 758 F.3d 1119, 1136-37 (9th Cir. 2014) (finding that the due diligence rule "is contrary to federal law as clearly established by the Supreme Court ... and unsound public policy."); *United States v. Tavera*, 719 F.3d 705, 711 (6th Cir. 2013) ("This 'due diligence' defense places the burden of discovering exculpatory information on the defendant and releases the prosecutor from the duty of disclosure. It relieves the government of its *Brady* obligations. In its latest case on the issue [*Banks v. Dretke*, 540 U.S. 668 (2004)], however, the Supreme Court rebuked the Court of Appeals [for the Fifth Circuit] for relying on such a due diligence requirement to undermine the *Brady* rule .... [T]he clear holding in *Banks* should have ended that practice.").

Finally, even if this Court believes the circuit court's opinion correctly addressed this issue as to the *Brady* claim, it is error to apply it to Mr. Lee's *Napue* claim, a claim the circuit opinion never once mentioned. *Napue* and *Brady* are independent claims with separate legal standards. This Court erred by conflating the two.

### IV.    THIS COURT'S REJECTION OF MR. LEE'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS MANIFEST ERROR.

This Court makes short shrift of Mr. Lee's ineffective assistance of counsel claim. Its order cites only to the circuit court's opinion stating that the likelihood of success was slim because ineffectiveness claims "are regularly…resolved under § 2255," Dkt. 35 at 5, and then notes this Court's own opinion in *Purkey v. United States*, No. 2:19-cv-00414-JPH-DLP (S.D. Ind. Nov. 20, 2019) (hereafter "*Purkey*"). Neither of these rationales addresses the actual facts in Mr. Lee's case and both contain errors of law and fact. First, simply because a claim is regularly

15

resolved under § 2255 does not mean that it can never be addressed in a § 2241 petition. The Savings Clause provides a remedy whenever § 2255 has proved inadequate or ineffective, an analysis that requires scrutiny of the specific facts and circumstances of a particular case. *Atkins* claims are routinely litigated in § 2255 motions, yet the *Webster* court found, under those unique circumstances, that he could proceed in § 2241.[3] Furthermore, the *Lee* case presents a factual question different from *Purkey*; to apply § 2241 this Court must engage in the specific facts of his case rather than rejecting them as "essentially identical" to *Purkey*. Mr. Lee's case differs from *Purkey* in myriad ways.

### A.  Mr. Lee is not trying to raise his IAC claim for the first time via § 2241.

Unlike *Purkey*, Mr. Lee is not raising a constitutional claim[4] as an initial claim in this Court.  Mr. Purkey never raised his IAC claim in his § 2255 proceeding and thus the court reviewing his § 2255 motion had no opportunity review it. He presented it for the first time in a § 2241 petition and made no attempt to point to a discrete procedural glitch that prevented him from raising it earlier.

In contrast, Mr. Lee's right to § 2241 relies on exactly what the Government recognizes as proper: "an intervening judicial decision unavailable at the time of the prisoner's first § 2255 motion that demonstrates fundamental error in the prisoner's conviction or sentence." Dkt. 25 at 4. Mr. Lee's lawyers did in fact present his claim for the first time in § 2255 proceedings; however, their ignorance about habeas procedure resulted in the district court precluding

---

[3] *In re Davenport*, 147 F.3d 605 (7th Cir. 1998) provides another example. In that case, Mr. Davenport and Mr. Nichols sought § 2241 relief based on an intervening change of law. The claim for which they sought review is a type routinely litigated in §2255 proceedings and the distinction between Mr. Nichols's grant of §2241 relief and Mr. Davenport's denial lay in the timing of the challenge: Mr. Nichols had no prior opportunity to raise his claim. *Id*. at 610.

[4] It is an "equitable ruling" not a "constitutional ruling." *Martinez*, 566 U.S. 1, 16 (2012).

consideration of the evidence in support. *Trevino v. Thaler,* 569 U.S. 413 (2013), and *Martinez v. Ryan*, 566 U.S. 1 (2012), are intervening judicial decisions that, had they already been in place, would have remedied that procedural bar and would have allowed full merits review of Mr. Lee's IAC claim. However, Mr. Lee never received review because he had already been denied in district court when those cases were decided and the Eighth Circuit rejected Rule 60(b) as a proper avenue to redress the problem. Mr. Lee, unlike Mr. Purkey, has a procedural glitch in his § 2255 proceeding that precluded remedying the fundamental error in his death sentence. He is not arguing that § 2241 is an alternative way to present a new IAC claim in his case; he is showing the need for § 2241 to remedy the unique procedural defect that occurred during his § 2255 proceeding.

### B. *Ramirez* is consistent with Mr. Lee's case.

This Court further found that *Ramirez v. United States*, 799 F.3d 845 (7th Cir. 2015), was not consistent with Mr. Purkey's allegations. Mr. Lee's case differs in this respect as well. Mr. Lee's case presents precisely the same issue as *Ramirez.* At issue there was § 2255 counsel's failure to proffer evidence in support of a claim. *See Ramirez*, 799 F.3d at 849 (noting district court denied motion because "Ramirez (still) has not produced any documents to show…he was prejudiced by [trial] counsel's omission."). It was this omission—like that in Mr. Lee's case—that precluded meaningful review of Mr. Ramirez's underlying Sixth Amendment claim, and for which the Seventh Circuit held that *Trevino* and *Martinez* provided a remedy.

The Seventh Circuit's choice of remedy in *Ramirez* also reflects that the *Martinez/Trevino* decision was not premised on Mr. Ramirez's abandonment by his appellate lawyer. If it were, the remedy would have been reinstatement of the appeal. But the Seventh Circuit remanded the case to the district court with instructions to reopen the § 2255 proceedings

17

to allow Mr. Ramirez to proffer the missing evidence and remedy the omission of post-conviction counsel. *Id*. at 856. This is the same remedy Mr. Lee seeks: not to litigate a new claim before this Court in the first instance (as Mr. Purkey sought) but to be allowed to proffer the probative evidence precluded by his post-conviction attorney's ineffectiveness. Mr. Lee is not asking this Court to adjudicate new or different claims; he is still seeking one reasonable opportunity to litigate the Sixth Amendment trial right that was foreclosed by the unique structural problem in his § 2255 proceeding.

### C.   Mr. Lee's inability to litigate this issue in a Rule 60(b) motion makes § 2241 a proper vehicle for relief.

This Court held that Mr. Lee's claim must fail because *Ramirez* did not involve the Savings Clause question. Dkt. 35 at 5 (citing *Purkey* at 21-23). This reasoning, fleshed out in the *Purkey* opinion, actually proves Mr. Lee's distinct argument. There, this Court noted that "nothing in *Ramirez* suggests that its holding regarding *Martinez-Trevino* applies outside of the § 2255 context." *Purkey* at 21. According to this Court, *Ramirez*'s application of *Trevino* to Rule 60(b) motions in § 2255 proceedings "does not create a rule that federal prisoners must have an alternative way to raise ineffective assistance of postconviction counsel when § 2255 is closed." *Id*. at 22. This is correct as a general principle and explains why Mr. Purkey was not entitled to relief: he attempted to raise new claims in § 2241 and there was no "glitch" in his § 2255 proceedings that might have permitted him to do so.

The facts in Mr. Lee's case are different. He did raise his IAC claim in his original § 2255 motion. As in *Ramirez*, he then filed a Rule 60 motion, based on an intervening change in the law, to overcome the procedural barrier that precluded merits review of the claim, but the Eighth Circuit refused to recognize the applicability of *Trevino* in the 60(b) context in a federal case. If Mr. Lee had been in another circuit, like the movant in *Ramirez*, he would have been

18

entitled to relief. The fact that *Ramirez* does not "involve the Savings Clause question" highlights the reality that some § 2255 petitioners have a remedy in § 2255 and for others, like Mr. Lee, § 2255 is ineffective and inadequate.[5]

## V.      THIS COURT ERRED BY FAILING TO ADDRESS ALL OF MR. LEE'S CLAIMS.

A Rule 59 motion should also be granted where a court overlooks a factual or legal argument. *See Plymouth Cty., Iowa ex rel. Raymond v. MERSCORP, Inc.,* 287 F.R.D. 449, 456–57 (N.D. Iowa 2012) (granting Rule 59 relief because "failure to consider and argument of a party is at least as fundamental an error as failure to consider an important factor in determination of an issue.") (citing *Tiffany (NJ), L.L.C. v. Forbse,* No. 11-CV-4976, 2012 WL 3686289, *5 & n. 6 (S.D.N.Y. Aug. 23, 2012) & *United States v. Jasin,* 292 F.Supp.2d 670, 676 (E.D. Pa. 2003)); *see also Spitznas v. Boone,* 464 F.3d 1213, 1225 (10th Cir. 2006) (district court's failure to make any ruling on claim presented in habeas petition cognizable in post-judgment motion)).

In addition to the claims previously discussed, Mr. Lee alleged that any interpretation of § 2255 and § 2241 that would present an absolute bar to Mr. Lee's claims would create an unconstitutional suspension of the writ. This allegation was fully briefed in his § 2241 petition, Dkt. 1 at 63-65, in the Government's responsive pleading, Dkt. 14 at 37-38, and in Mr. Lee's

---

[5] Indeed, some of the case law cited by this Court to deny relief in *Purkey* actually supports Mr. Lee's position. For example, according to this Court, *United States v. Sheppard*, 742 Fed. Appx. 599 (3d Cir. 2018), rejected Mr. Purkey's argument because it demonstrated that he could have "raise[d] the *Martinez-Trevino* issue in a Rule 60(b) motion in the underlying § 2255." *Purkey* at 23. Mr. Purkey, of course, did not (and could not have) litigated his claims in a Rule 60 motion because he had never raised them in his initial § 2255 motion. Mr. Lee, however, did both. The only reason he did not get the relief Mr. Ramirez did was because of the construction that circuit gave to the use of Rule 60 in federal habeas case. Unlike Mr. Purkey, Mr. Lee was deprived access to Rule 60(b), so in his case § 2255 is, in fact, inadequate and ineffective.

reply brief. Dkt. 15 at 30, 31-32. Because this Court has failed to address this claim, it should grant Mr. Lee's Rule 59 motion to allow further proceedings on it as well.

**CONCLUSION**

The December 6, 2019 opinion of the Seventh Circuit vacated only the stay of execution entered by this Court. Its terse opinion did not resolve questions still before the Court, including whether the Government can effectively hide evidence throughout trial and post-conviction that nullifies the premise of its case for death, or whether a "glitch" in the construction of § 2255 evident in his case deprived Mr. Lee of a remedy available to others for a Sixth Amendment violation. Mr. Lee respectfully asks this Court to reconsider its opinion of March 20, 2020, and allow him, once the facts are developed, to prove he can succeed on the merits of his claims.

WHEREFORE, Daniel Lee respectfully moves this Court to reconsider its judgment of March 20, 2020.

Respectfully submitted this 17th day of April, 2020.

\s\ Morris H. Moon
MORRIS H. MOON
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(713) 880-3556
Morris_Moon@fd.org

\s\ George G. Kouros
GEORGE G. KOUROS
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
(301) 821-0855
George_Kouros@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Indiana using the CM/ECF system on April 17, 2020. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

By: /s/ George Kourus
GEORGE KOUROS
Attorney for Daniel Lee
Assistant Federal Public Defender
Federal Capital Habeas Project
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770
Telephone: (301) 821-0855
Email: George_Kouros@fd.org