IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH JUDICIAL CIRCUIT

```
- - - - - - - - - - - - - - - - x
                                 :
WESLEY PURKEY,                   :
                                 :
        APPELLANT,               :    Criminal No. 19-3318
                                 :
    v.                           :
                                 :
UNITED STATES OF AMERICA,        :
                                 :
        APPELLEE.                :
                                 :
- - - - - - - - - - - - - - - - x    Chicago, Illinois
```

June 16, 2020

**TELEPHONIC CLOSING ARGUMENTS**

BEFORE:    THE HONORABLE DIANE P. WOOD, Chief Circuit Judge
           THE HONORABLE MICHAEL B. BRENNAN, Judge
           THE HONORABLE AMY J. ST. EVE, Judge

APPEARANCES:                    ALAN E. SCHOENFELD, ESQ.
                                Wilmer, Cutler, Pickering, Hale
                                and Dorr, LLP
                                7 World Trade Center
                                250 Greenwich Street
                                New York, NY 10007
                                   On Behalf of the Appellant

                                BRIAN P. CASEY, ESQ.
                                Office of the State's Attorney
                                400 East Ninth Street
                                Room 5510
                                Kansas City, MO 64106
                                   On Behalf of the Appellee

Transcription Company:          CompuScribe
                                P.O. Box 789
                                Cheltenham, Maryland  20706-9998


Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

*CompuScribe*
*(301) 577-5882*

<u>I</u> <u>N</u> <u>D</u> <u>E</u> <u>X</u>

                                                          <u>Page</u>

Preliminary Matters                                          3

Comments by Alan Schoenfeld, Esq.
    Attorney for the Appellant                               3

Comments by Brian Casey, Esq.
    Attorney for the Government                             23

Further Comments by Alan Schoenfeld, Esq.                   43

Keynote:  "---" indicates inaudible in transcript.

lnc                                                                    3

P R O C E E D I N G S

(Whereupon, 10:09 a.m., the hearing begins.)

THE COURT:  Good afternoon everyone.  Before we begin our arguments, let me just make sure that we have in fact everyone properly hooked up.  Mr. Schoenfeld, are you here?

MR. SCHOENFELD:  I am, Your Honor.  Can you hear me?

THE COURT:  Yes.  I can.  Excellent.

And Mr. Casey?

MR. CASEY:  I am, Your Honor.

THE COURT:  Excellent.  Okay.  Well in that case we are ready to hear arguments this afternoon in the case of Purkey against United States, which is 19-3318.  And I believe we begin with Mr. Schoenfeld.

MR. SCHOENFELD:  Thank you, Your Honor.

And Judge St. Eve and Judge Brennan are you able to hear me okay?

THE COURT:  Yes, thank you.

THE COURT:  Yes, sir.

MR. SCHOENFELD:  Okay.  Thank you very much. May it please the Court, Alan Schoenfeld for Petitioner Felon Wesley Purkey.  Wesley Purkey was convicted at trial and sentenced to death.  As the Court is now aware the Government has scheduled his execution for July 15th.  No court has heard

lnc                                                                           4

his substantial claims that the ineffectiveness of his trial in (indiscernible).

I want to address two points this afternoon. First, Petition number 2241 is available to a death eligible Federal prisoner who is unable to present a meritorious ineffective assistance of trial counsel on their initial 2255 motion.

THE COURT:  So Mr. Schoenfeld --

MR. SCHOENFELD:  That was --

THE COURT:  -- Mr. Schoenfeld, let me just ask you a question.  Over the years since AEDPA was passed, I can't tell you how many applications for permission to file a second or successive motion under Section 2255 I have seen, in which the person wants to raise an ineffectiveness of counsel claim but then you go back and look and you see in the first 2255, somebody did raise ineffectiveness of counsel say for reasons 1, 2 and 3.  Now the person wants to make an ineffectiveness claim for reasons 4, 5 and 6.

So in that sense, no court had ever heard it, but this Court and every other court in the country to my knowledge, will always decline permission to file the second or successive because there has been an erring of the Sixth Amendment claim which is understood to be one claim and not the individual parts of it.

So could you tell me how your rule fits with that?

MR. SCHOENFELD:  Sure.  I am not certain that is correct, Your Honor. I think when you are looking at an ineffective assistance of trial counsel claim, you have to look at what the particular ineffective assistance is.  If it is not enough to say that it is one ineffective assistance of counsel claim.  Here there are ineffective assistance of trial counsel claims at least that go to for example, Juror number 13 and the seating of a juror who was biased as a matter of law.

No court has ever heard that claim.

THE COURT:  No, but I am saying that -- that happens before -- I mean, trust me, it really does happen in a lot of cases.  So I wonder whether you can point us to a case where again staying for the moment just inside the conventional 2255, because obviously a Sixth Amendment claim is a Constitutional claim, why that is not understood to be already adjudicated even though certain aspects of the ineffective counsel weren't erred?

MR. SCHOENFELD:  Sure, I understand the question. I can't point to a case standing in front of the Court right now where there has been so but I think that the restriction on 2255 second or successive motions goes to the substance of the claim and not nearly how it has been labeled.  And so if there are ineffective assistance of counsel claims that weren't erred during the criminal trial and that were not

erred in the 2255 proceeding for example, because there was ineffective assistance of 2255 counsel, I don't think the Court would necessarily treat that as a second or successive habeas petition.  I think the Court goes beyond the sort of formal nomenclature of the claim and looks to the precise substance of the allegation, why in fact was trial counsel ineffective?

And so I think you know, ineffective assistance of counsel claims from habeas petitions are usually brought as separate free standing counts with respect to the precise type of ineffectiveness claimed below.  And so one might rate -- relate as here to deceiving of a bias juror, another might relate to the failure to present a comprehensive mitigation case.

(Whereupon, the parties are speaking simultaneously.)

THE COURT:  Mr. Schoenfeld --

MR. SCHOENFELD:  I don't think those are --

THE COURT:  -- even if that is true -- if they are viewed separately and not as the same claims, to pick up on Judge Wood's question, are there any cases that you can identify where a request for a successive petition raising an additional or new ineffective assistance of counsel claim was permitted?  Where there wasn't some change in the law or Constitutional reason that would allow for the second

lnc                                                          7

petition to be brought?

MR. SCHOENFELD:  So again I am not -- I am not able to point a case where a second or successive 2255 petition could be brought based on new allegations about ineffectiveness of counsel.  But again this is a 2241 petition and I don't think the Government has made any arguments that Mr. Purkey could have brought a second or successive 2255 petition.

Their argument in this case is that a 2241 petition is unavailable to a Federal defendant like Mr. Purkey and our submission to the Court is when you have been denied your opportunity or when you are structurally prohibited from bringing an ineffective assistance of trial counsel claim on direct appeal as you are in the Federal system under Massaro and under this Court's decision in Ramirez and you have been deprived of effective assistance of counsel at the 2255 stage, what work is the safety valve in 2255(e) doing for you?

THE COURT:  So you know --

THE COURT:  Well, you --

THE COURT:  -- it is doing a fair amount of work as other cases including Davenport and Webster and so on have shown.  What I am having trouble too, grasping is -- let's put a successive 2255 off the table.  I actually agree that the criteria are very strict and it is quite rare to see one

of those granted.  But what is the difference between an unsuccessful effort to show ineffectiveness of counsel under a 2255 and one where there is no opportunity -- what the Government is arguing is that Mr. Purkey through his 2255 Counsel did have an opportunity, it is just that he didn't win.

And so that is one question -- actually I have another question, which is suppose you won and there was a 2241 and somebody wants to come along and say heaven forbid, that you were ineffective at the 2241, do we get another 2241 round?  Do I keep doing this forever?

MR. SCHOENFELD:  So to answer to your second question first, no I don't think that is the case.  I think the Court was very clear in Martinez and Trevino and Devilla that the critical question here is whether you have the opportunity for someone like a Federal prisoner who doesn't have the opportunity to raise ineffective assistance of trial counsel on direct appeal. Whether you have an opportunity in your initial collateral review proceedings to get a reliable determination or a reasonable opportunity to get a reliable determination about the fundamental legality of your conviction.

And I don't think there is any dispute here that with respect to the claims that he is presenting on this 2241, there has been no opportunity to present that.

lnc                                                                    9

THE COURT:  But I think --

MR. SCHOENFELD:  The ineffective assistance --

THE COURT:  -- actually I am going to stop you on that premise.  I think there is a dispute because he could have brought these claims in his initial 2255, his lawyer just didn't.

MR. SCHOENFELD:  Exactly.  And I think that that is exactly where we get to the language of 2255(e) and Martinez and Trevino.  And I think as this Court noted in Ramirez, Martinez and Trevino require this Court to substantially change the way they think about initial collateral review proceedings with respect to ineffective assistance of trial counsel claims that cannot be presented on direct.

THE COURT:  Mr. Schoenfeld, on that point of Ramirez, are you asking us -- because both parties argued scope.  Are you asking us to apply Ramirez and that Ramirez answers this question or do we have to extend our law pass the rule 60(b) context to cover these circumstances beyond where Ramirez is?

MR. SCHOENFELD:  So I -- to be candid with the Court, I think we are asking for the recognition of a new claim that can be brought on to 2241.  I do think the logic, however, of Ramirez is merciless.  It says that it applies to 2255 for Federal prisoner just as it applies -- just as Martinez and Trevino apply to 2254.  And while the context of

lnc                                                                    10

<u>Ramirez</u> was a rule 60(b) motion, it makes no difference for these purposes because again the question this Court needs to answer is a question of statutory interpretation with respect to 2255(e).

What does 2255 --

THE COURT:  Can I just suggest that it depends on how you look at <u>Ramirez</u> and it also depends on how you compare 2254s and 2255s.  What <u>Trevino</u> and <u>Martinez</u> are looking at is the first opportunity somebody has to be in Federal Court on a presentation of their Constitutional arguments.  The vehicle of course for a State prisoner being 2254.  So maybe you have had a couple of rounds in the State Court but procedural defaults and the like are excused.

In the case of a 2255, it is a more compact procedure, if you will.  You have had your direct appeals.  Then your motion under 2255 is the congressional substitute for habeas corpus for Federal prisoners.  For reasons we all understand.  And so in some ways each of them is looking at that first opportunity to present to the Federal District Court whatever the arguments may be.  And again, maybe you win, maybe you lose.  Maybe you have a good lawyer and maybe you have not such a good lawyer.  But where do you get that it is not a real opportunity unless you have effective counsel?

MR. SCHOENFELD:  Well, so a couple of observations.

Or a couple of points here.  I think first up as the Court pointed out in it was either Webster or Ramirez, if anything 2255 should be broader for Federal prisoners because 2254(I) precludes relief when the grounds for relief is the ineffectiveness of collateral review counsel either in State or Federal habeas proceedings.  And there is no -- there is no such prohibition on 2255.

I think you are exactly right, Judge Wood -- Chief Judge Wood, that that is one way to think about what Martinez and Trevino are getting at.  I think the other way to think about it is, if you are deprived on your initial opportunity because again it may be the case that 2254 is a bit more reticulated and so you have direct appeal in State Court, you have collateral review in State Court and then you have collateral review in Federal Court.

But what I think what Martinez and Trevino are trying to get at is, if you were deprived of your opportunity, your one opportunity to present an ineffective assistance of trial counsel claim, because of the ineffectiveness of your initial collateral review counsel, I don't think it matters whether that is in State or Federal Court.

And for the reasons I just explained I think it should be even more permissive in Federal Court.  But if you didn't have that opportunity to present a claim of a

lnc                                                                    12

meritorious claim of ineffective assistance of trial counsel,

one opportunity because of the ineffectiveness of your

initial habeas counsel or 2255 counsel, in Martinez and

Trevino, as this Court recognizes Ramirez should apply here

to give you that opportunity.

          And so again the question under 2255(e) is, have

you had one reasonable opportunity to get a reliable

determination of the underlying legality of your conviction.

And where you can bring an ineffective assistance of trial

counsel claim on direct appeal.  And where as a death

eligible defendant, you have been given a statutory right to

2255 counsel under 3599 and that counsel was ineffective, you

must have one opportunity to present your ineffective

assistance of trial counsel.

          THE COURT:  Mr. Schoenfeld, if we agree with you,

why wouldn't this open the floodgates to 2241 litigation for

Federal cases?  I mean --

          MR. SCHOENFELD:  It is a -- sorry --

          THE COURT:  -- where does --

          MR. SCHOENFELD:  -- I thought you were going to say

it is a great question yes --

          THE COURT:  -- where -- where would you recommend

drawing the line on what type of cases can be brought.

Because if you are looking to Martinez  and Trevino, they

cover not only ineffective counsel but if a defendant brings

lnc                                                                          13

the claims him or herself and doesn't have the opportunity to raise.

MR. SCHOENFELD:  Absolutely.

THE COURT:  So I assume you would say the same would apply here, that whether counsel is ineffective or the defendant didn't bring the claims, then they wouldn't the opportunity for the first round of litigation in post conviction, so they would be entitled to a 2241, is that correct?

MR. SCHOENFELD:  I think that is correct.  But I think the question the Court needs to answer here is a narrower one as put it in our brief.  This is a question of a death eligible Federal defendant who was given a statutory right to effective 2255 counsel --

THE COURT:  So --

MR. SCHOENFELD: -- in section 35 --

THE COURT:  -- that is your distinction then?  Because I mean, with the death is different arguments.  Sometimes those arguments are based just on a gut feeling.  You know obviously death is different in that it is permanent.  But we look in the law for something that we can understand as a limiting principle.  And I didn't pick up from your brief but you are saying now that you think the statutory right to counsel for a death eligible or a person who is under a sentence of death is a way of distinguishing

lnc                                                                14

this case from the great mass of other 2255s that come along?

THE COURT:  Nor did I.  I didn't understand you to be proposing that limiting principle either.

MR. SCHOENFELD:  So let me clarify and then I also want to get back to some other limitations in response to Judge St. Eve's question.  The statement of the issue is on page 5 of our opening brief is limited to individual sentence to death.  But if we were unclear in the brief that 3599 is one possible way to limit that, I apologize but I do think that it is a way to limit the sort of flood gates problem that I think Judge St. Eve has acknowledged.

I think another way to think about this, Chief Judge Wood, I think this goes to your more of gestalt feeling about death being different. But Woodson and Williams which we do cite in our brief, made clear that there is a premium on a reliable determination of guilt in capital proceedings.

And Martinez and Trevino and this Court in Webster speaks to that precise concern.  Did you have a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of the conviction.  And any death case as informed by Martinez and Trevino I think what that means is that you must have at least one opportunity that your appointed counsel for 2255 is ineffective in failing to raise a claim that on its face has some merit.  That 2241 has to be the safety valve that gives you the opportunity to

present that claim.

So to go back to Judge St. Eve's question if I might, I do think that there is a limitation here in the sense of the only rule we are asking this Court to endorse is that 2241 be available for death eligible defendants so that they have one opportunity to present an ineffective assistance of trial counsel.

I think there are additional limitations --

THE COURT: But what, it would be a little different than that. It would be one opportunity to raise any -- all issues of ineffective assistance of counsel because he already had one very detailed opportunity in his initial 2255 to raise I think there were 16 different ineffective assistance of trial counsel claims.

MR. SCHOENFELD: I -- with respect, Your Honor, I disagree that ineffective assistance of counsel can sort of be agglomerated into one undifferentiated claim. If you brought an ineffective assistance of counsel claim in your initial proceedings, then it related to you know, some issue -- let's say it related to some issue about the guilt phase but because of your 2255 counsel was ineffective, it raised no issues about the penalty phase. I don't think this Court would treat that as the same claim subject if it were available to a second or successive -- second or successive habeas issue.

lnc                                                                16

THE COURT:  So if that is true -- if you are saying that they aren't treated the same. If we take that premise, then how do you respond to what Judge Wood asked earlier? You are arguing that death eligible defendants should get or defendants who have been sentenced to death should get one opportunity for all claims to be addressed.  He had his opportunity in the 2255.  Now you are asking for a 2241 to raise additional claims of ineffective assistance of trial counsel.

What about if he comes up -- if you win this round and he comes up with 5 or 6 other ineffective assistance --

MR. SCHOENFELD:  Sure --

THE COURT:  -- where do we draw that line?  Is it really -- he gets two opportunities?  A 2255 and a 2241 and that is it?

MR. SCHOENFELD:  It is, Your Honor, and I think the reason is because Martinez and Trevino and Devilla place the emphasis on initial collateral review proceedings.  Initial, when you don't have an opportunity to raise this specific claim on direct appellate review.  And so the question then becomes where your 2255 counsel is ineffective, have you been given that is your initial collateral review opportunity and where that is ineffective under Martinez and Trevino, you get some opportunity to press(sic) that claim.  And 2241 is that opportunity.

lnc                                                                17

To answer your question directly, Judge St. Eve, if someone wants to press a 2241 argument and that fails and they then come back and want to press a second 2241 claim, I think that is dismissible as the Government argues at the threshold because that is a essentially a second or successive argument related to the initial collateral review proceedings.

THE COURT:  Would that be under the old abuse of the writ doctrines?  Or how would you get rid of it?

MR. SCHOENFELD:  It would. I think it would be under the abuse of the writ doctrine and I think this Court has recognized that abuse of the writ principles do in fact apply to 2241 petitions.  And I don't think it is a wholesale return to abuse of the writ principles because the availability of 2241 is so tightly circumscribed, it is only for ineffective assistance of trial counsel.

THE COURT:  Well, I can certainly see that it is tightly -- if there is some way to restrict it to Federal death sentences, there are not that many of them.  And so that is a restricted pool.  They are huge numbers as the Government points out of pro se applicants under 2255, filed their motions and they would like counsel and sometimes rarely they get it and most of the time they don't.

So that is different.

MR. SCHOENFELD:  I do think that is different.  And

lnc                                                                18

I don't think there has been a market increase in 2254

proceedings as a result of Martinez and Trevino and we have a

natural experiment of roughly 9 years and there hasn't been

the type of flood gates problem that this Court has been

concerned about.  And I don't think that there is reason to

believe that there would be a similar flood gates issue if

2241 became available even in the more -- the broader

circumstances where it was available to any Federal

(indiscernible).

But again, all we care about in this case as the

statement of the issues presented makes clear is whether a

Federal death eligible defendant has one opportunity to

present his ineffective assistance of trial counsel. If I

might, I would like to --

THE COURT:  How do -- How does your limitation fit

within the language of the savings clause? Specifically you

want to limit this to death eligible defendants or defendants

who have been sentenced to death.  You get to 2241 through

the savings clause in 2255 which says that the remedy of the

motion has to be inadequate or ineffective to test the

legality of his detention.

MR. SCHOENFELD:  Right, and so I think --

THE COURT:  How would you -- that language -- I

don't know how you would read in a death penalty eligible

defendant as an exception within that language.

MR. SCHOENFELD:  So again, I think it -- it can come under two different auspices.  I think one is the heightened standard of review for convictions to sentences and death cases as --

(Whereupon, the parties are speaking simultaneously.)

THE COURT:  But that doesn't help with the plain language of the statement.

MR. SCHOENFELD: -- the Supreme Court --

THE COURT:  That might be an equitable reason to do it but if we are trying to differentiate for purposes of the statute and fitting this in a savings clause case --

MR. SCHOENFELD:  So I think one way to do it is to say that the standard for adequacy of the underlying determination is higher in a death case than it is in your standard run of the mill criminal case.  And so is the availability of 2255 (indiscernible)adequate in a death case where the Court needs to assure itself that the underlying determination was based on reliable evidence.

So I think that is one way to read the limitation into the text of 2255(e).  I think the other way to do it is under 3599 and so ineffective in 2255(e) okay, calls to mind the effectiveness of the counsel.  And you may not have a right to 2255 counsel in any all cases but you do under 3599. So where the safeguards available in your initial 2255

lnc                                                                    20

proceeding effective in that case.  And that requires consideration of the procedural safeguards that are available to you in the death case which does include the appointment of adequate counsel under 3599.

If I might, I would like to just move on to the underlying claims or at least one of the underlying claims beyond the procedural threshold question of 2241, 2255.

THE COURT:  That is fine.

MR. SCHOENFELD:  Of course, I would be happy to answer whatever questions the Court has.  I did reserve 5 minutes for rebuttal so --

THE COURT:  You are not there yet.  Can you see the clock? It says 7:50 --

MR. SCHOENFELD:  I can, I just wanted to make sure that --

THE COURT:  Right.  I will remind you if you need it.

MR. SCHOENFELD:  Okay.  I appreciate it.  So with respect to the three claims that Mr. Purkey seeks the opportunity to present for the very first time, to a Court on 2241 -- the first is the seating of Juror 13 and to remind the Court about the relevant facts.  Mr. Purkey was sentenced to death by a jury that included a woman who was under any fair reading of the law, presumptively biased and should have been excluded from the jury.

Trial Counsel failed entirely to note Juror 13's disclosures and failed to strike her.

THE COURT:  So I take it these disclosures were in the record?  I mean, how did you find all of these things?

MR. SCHOENFELD:  So her questionnaire is in the record.  It was obviously available to Trial Counsel and it was in the record that 2255 Counsel had access to but they never discovered it and there is a declaration from Laura O'Sullivan who was 20 -- who was Trial Counsel who said I have never seen this, this was never brought to my attention.

THE COURT:  So Counsel didn't look at the questionnaires of the jurors who actually sat?

MR. SCHOENFELD:  Certainly not Juror 13, I --

THE COURT:  He had another counsel too, though.  We don't know what that counsel did.

MR. SCHOENFELD:  I think that is right.  I mean there is no indication -- so I think Judge St. Eve what you might be getting at is whether there was a strategic reason to seat Juror 13.  There was none.  The Government has never hypothesized any.  Trial Counsel's affidavit -- Laura O'Sullivan's affidavit makes it entirely clear that they were unaware of this issue.  And so --

THE COURT:  Is there any suggestion in the jury selection process though in the review of the questionnaires, you have an affidavit from one of his attorneys but not the

other.  So co-counsel split things up all the time, did the other lawyer look at the questionnaires and maybe the lawyer who submitted the affidavit did not?

MR. SCHOENFELD:  I don't know the answer to that. There is certainly no evidence to suggest that this was a strategic move on Mr. Duchardt's part.  You will recall that he submitted a 117 page affidavit in the trial --

THE COURT:  Yes.

MR. SCHOENFELD: -- court.  Sort of vouching for his own approach in this case.  This was not an issue he ever attended to.  The record, so far as it comes to the Court on 2241 is that no one until 2241 Counsel picked up on the fact that this juror had the same name and at the same age was the victim of a similar sexual offense.  That juror under this Court's very, very clear case law is presumptively biased as a matter of law and her sitting on the jury is a structural error.

The failure to strike a juror and I think if you look at this Court's decision in Oswald, what the Court said it may be the case that the defendant is sure to lose on retrial but the seating of a prejudiced juror is a structural error that requires a new trial in this case.  I see it --

THE COURT:  You are on your rebuttal time if you would like to wait.

MR. SCHOENFELD:  Yes.  Sure, I would like to

lnc                                                                    23

reserve that time, Your Honor.

THE COURT:  That would be fine.  Thank you.

MR. SCHOENFELD:  Thank you.

THE COURT:  All right. Mr. Casey?

MR. CASEY:  May it please the Court, Brian Casey appearing on behalf of the United States today.  In what the Appellant is asking this Court to do is apply its precedent under which the Appellant's claims would fail, stretch that precedent in a way that then applies to a statute and stretches it to the point that it breaks.

And I know that the Appellant's changed its argument, I think in some significant ways here in oral argument.  So I will be addressing both what is in the brief but what is said at oral argument.  But there is really three themes that I think need to be developed.  And at least relying on the brief, the entry way into the argument the Appellant uses in this Court's law is Ramirez.

Well Ramirez has two issues.  And the first issue is, is this the second and successive claim.  And if it is a second and successive claim, then it can't be brought. Martinez, Trevino none of those other considerations apply if the claim is at its heart a second and successive.  The parties and Mr. Purkey's counsel have confessed that these claims would be second and successive.

So under the plain language of Trevano -- I mean,

lnc                                                                    24

under the plain language of Ramirez, I am sorry -- they would

lose.  They would be just like the Adams case from this Court

and the claim would lose.

THE COURT:  What about going back to Martinez and

Trevino though and saying that at least in death cases --

remember the rationale that the Supreme Court was looking at

was the Thompson case because for a very long time it had

been understood that you didn't have a right to counsel under

the Sixth Amendment or anything else in collateral

proceedings and thus you couldn't complain about

ineffectiveness of counsel because you know, if you didn't

have any right to counsel at all, there was no such right.

And the Court took another look at that in Martinez

and Trevino and it says essentially well in these states,

first there was the absolute rule and then there was the

practical impossibility extension Trevano, in these states,

your first shot is actually on collateral review and

ineffectiveness of counsel is a fundamental claim so you can

bring it then and if it is, unsuccessful, you can go over to

2254 without being faced with procedural default or the other

problems.

And so why --

MR. CASEY:  I know --

THE COURT:  -- and yet -- and he is saying his

client had a right to counsel at the 2255.  The counsel

lnc                                                          25

performed inadequately so it is not a <u>Thompson</u> problem, there was a right to counsel.  Counsel performed inadequately, so why shouldn't somebody hear this claim about Juror number 13 for example?

MR. CASEY:  I think there was a lot to be said about why <u>Martinez</u> and <u>Trevino</u> don't apply.  And first, to the sort of new claim that -- at least I understand it to be a new claim that this is all limited to death penalty. <u>Martinez</u> wasn't a death penalty case.  And nothing about its reasoning would limit itself to a death penalty.  Instead <u>Martinez</u>, <u>Trevino,</u> and <u>Devilla</u> all limit themselves to initial collateral review.

So there is the limiting principle.  So I don't know that the death penalty limiting principle certainly does not come from that line of cases.  But moreover --

THE COURT:  If it comes from anything, it comes from the notion that you have to find a right to counsel to begin with before you can start complaining about ineffectiveness.

MR. CASEY:  That is correct, Your Honor.  And so I think that goes to what my next point was going to be and what is the right to counsel that comes out of those cases? And the Supreme Court clearly says it is not a Constitutional right to counsel.  Instead it is something based in equity. And it is -- basically I think of it more in terms of not a

right to counsel rather an equitable remedy.

And as an equitable remedy it allows for what would be procedural default in claims to be heard for the first time in Federal Court.  So what it really does is open the door to otherwise defaulted claims to Federal Court.  And principally what Martinez and Trevino does is what the Supreme Court had already done for 2255 in Massaro.  And that is say that ineffective assistance of counsel claims do not get procedurally defaulted for your initial collateral proceeding in Federal Court.

And so largely Martinez and Trevino really have no application.  Now I know in this Court, in Ramirez, this Court made no distinction between 2254 and 2255.  And found that these same equitable principles come to play.  But the equitable principles come to play with regard to procedural barriers to having the claim heard in the initial 2255.  And very importantly Ramirez is staged within the 2255 framework. It is asking the question within someone's initial 2255, this case is asking us to take it without.

THE COURT:  Mr. Casey, did the equitable principles come into play there because of the equitable nature of Rule 60(b)? Or because of Martinez and Trevino?

MR. CASEY:  (Indiscernible) Your Honor.

THE COURT:  Or both?

MR. CASEY:  I am sorry, Your Honor, I didn't hear

the last part of the question?

THE COURT:  Or because of Martinez and Trevino or both?

MR. CASEY:  I think both.  Because Martinez and Trevino clearly root themselves in equitable considerations and 60(b) is itself rooted an equitable consideration. But so is equitable tolling.  And in Lombardo, this case said well it doesn't go as far to equitable tolling.  Relying on prior precedent.  And so I think in that regard, both Ramirez in relying on Maples(sic) as prior precedent and Lombardo in relying on prior precedent, both really -- they don't change the law that much.

THE COURT:  But Ramirez relies also on the Supreme Court's decision in Gonzales against Crosby and in basically is this a real 60(b) or is this a second or successive petition?  In that instance, in the Ramirez situation as well as in Gonzales, it was a real 60(b).  And so you are still inside the boundaries of the original 2255.

MR. CASEY:  I agree, Your Honor.  And I think that that is part of the holding.  And I think that is part of why it is looking towards these equitable considerations and is doing it within the framework of 2255.  Nothing about, Ramirez, Martinez and Trevino, Gonzales, Devilla nothing about them address the issue of second and successive.

THE COURT:  How do you respond to Mr. Schoenfeld's

lnc                                                                           28

argument that he is entitled to counsel in a death penalty case on the post conviction? And that changes death penalty cases.

MR. CASEY: That is correct. There is a statutory right in death penalty cases.

THE COURT: So how do you respond to that in terms of the -- I didn't understand that to be the gist of the argument in the briefs? So I am giving you the opportunity to respond to that.

MR. CASEY: And my answer is it creates no limiting principle. And the reason it doesn't create a limiting principle is one, the supposed sources of this right, were not death penalty cases. Martinez, Ramirez, any other cases largely they are not death penalty cases. So whatever this equitable right that they are trying to hang on, they would be extending it in some  unforeseen way to say it is limited only to death penalty.

But to (indiscernible) statutory right to counsel. The statutory right to counsel in a 2255 is a required -- it is there for all death penalty cases. But in fact, it is the statutory ability to appoint counsel --

THE COURT: So is there any way to police the effectiveness of these counsel under the statutory right you are talking about? Or can somebody just you know, through a brief or two in and go to sleep?

MR. CASEY:  Your Honor, I don't think that one of the -- and the name of the case is not coming to me, I apologize to the Court.  But one of the considerations when this question was discussed in one of the cases was  exactly that and the answer was, well often times because it is a cold record proceeding, just the nature of it makes it very difficult for counsel to be ineffective.

THE COURT:  Well if it makes hard for counsel to be ineffective, I am sorry, I have been on this Court for 25 years and lawyers manage to be ineffective in lots of ways. Sorry.

MR. CASEY:  Fair enough, Your Honor. But I think going back to sort of the point I wanted to make in filling out the right to counsel, is that all 2255s that go to a hearing, the defendant also has the right to counsel.  In fact, the court shall appoint if there is going to be an evidentiary hearing.

THE COURT:  And what I am just trying to get at is if the cure for the occasional lawyer who is in a death penalty case and so appointed by pursuant to statute, if the cure is not giving somebody access to 2241, because of the savings clause, you know, the safeguard was put in there and it broke.  You know the facts show that it broke.  So if that is not it, then what is it in your view?  You just -- is that just tough luck and it is not really a real safeguard or is

there some other answer?

MR. CASEY:  Well I think Lombardo would say that with regard to certain counsel failures, the answer is there isn't a remedy.

THE COURT:  So death is the response?  So you put somebody to death because they had a bad lawyer who didn't raise a meritorious claim?  That is pretty harsh it seems to me.

MR. CASEY:  Well, I do think there are other equitable remedies and I think if you are really talking about there being some procedural bar, something about counsel performance created a procedural bar to hearing the claim, then I think 60(b) is the avenue.  But if what we are talking about is claims just not brought, then I -- then there is a (indiscernible).

And that is what the successive -- second successive bar is there to do.

THE COURT:  So though essentially what I am hearing you say is that if counsel is appointed for 2255 and the lawyer -- let's say doesn't spend five minutes doing an investigation, doesn't read the record, just kind of shows up and wings it in ways that the failure to investigate for example, the Supreme Court in a number of occasions has called out as a way the performance can be Constitutionally deficient.  It seems like Wiggins against Smith, there is

some other cases that have held that, I don't remember all of the names right now.

But it is a common holding.  So, that happens and the failure to investigate also means that potentially strong issues isn't brought to the Court's attention and it seems to me that would be prejudice as well.  So that looks like the Strickland is satisfied. But you are saying well, the person has to be turned away when they try to get some relief because you don't see how this fits within the savings clause.  You just see it as an unenforced -- it was not really right, it is just something that maybe will work and maybe won't.

MR. CASEY:  Your Honor, I think that situation comes much closer than the abandonment situation in Ramirez. If we have counsel that has nothing and obviously does nothing, that is much closer to abandonment in which there is an equitable remedy in 60(b). That is -- now where that line is, where the line between Ramirez and Lombardo lies, this Court hasn't developed yet.  But it also doesn't need to in this case.

Because this case is nothing like abandonment.  In this case, post conviction counsel brought 22(e) claims, 17 of which were for ineffective assistance of counsel and I think 6 or 7 were which were with some of the particular issues that are being brought in this case.  Creating a

lnc                                                                    32

mitigation hearing.  When that was denied, they filed a Rule

59 motion to reconsider.  When that was denied, they filed

with the District Court, a certificate of appealability.

When that was denied, they filed with the Eight Circuit, a

certificate of appealability.   Then they filed a brief.

They actually briefed issues that they were granted the

certificate of ability(sic) for.  And the Eight Circuit still

considered them.

When that was denied they filed a petition for a

re-hearing and when that was denied, they filed a petition

for ---.  So we are still far from the abandonment situation

that I don't think the Court needs to revisit where that line

between where the equitable remedy kicks in, Ramirez and

where the equitable remedy doesn't Lombardo, because here we

have a competent counsel pursuing the claim -- pursuing the

claim diligently and competently.

THE COURT:  So let me ask --

MR. CASEY:  Second guess, Your Honor --

THE COURT:  -- you this.  Juror 13, which bothers

me a lot. I mean, obviously our system is only as good as you

know, fair and impartial judge, a fair and impartial jury can

be.  It seems like a very simply measure would have been

enough to reveal this match between Juror 13 and the victim

in this case.  And it seems that there is a very strong

chance that the Judge would have granted an appropriate

motion to dismiss that juror for cause.  We are not in the peremptory world.  This would have been a dismissal for cause.

So do we rely on this jury anyway even though it may have been tainted by a biased person?

MR. CASEY:  Your Honor, the first part of that answer is I think we are a long ways away from getting the bias -- the bias question.  I think they have done a good job of I think Mr. Purkey's counsel has done a very good job of framing this in a way that has the appearance of bias.  But when you peel back the similarities are not so certain and not so similar and they -- and what they don't find is a case in which absent something else on the record, a juror would be stricken in this circumstance.

All of the --

THE COURT:  Well of course, they have never really had the chance to develop the record because of this but we do know these facial similarities which might have called for more in depth voir dire and more in depth examination.

MR. CASEY:  But at that point, Your Honor, we are getting to the question of trial strategy.

THE COURT:  Oh I don't know. Why would the trial strategy be advanced by having you know, a clone of the victim on the jury?  I mean, remember especially for a death case where it only takes one person to recommend life in

lnc                                                                    34

prison.

MR. CASEY:  We make a more fulsome recounting of the facts in our response to the District Court.  And so I refer the Court to that but in this instance, what we have is same first name, we know that.  We also note that this was all disclosed to Trial Counsel.  So what we are talking about are things and this goes to the question earlier from the Court, these matters were disclosed to the Trial Counsel.  So this is not a matter of Juror 13 was not -- was dishonest or withheld during voir dire.  These were matters that were disclosed in a -- in jury questionnaires prior to voir dire.

And the O'Sullivan affidavit that Mr. Schoenfeld refers to both in that affidavit and in Mr. Duchardt's affidavit, both Counsel they disagree about a lot but they agree that Ms. O'Sullivan had nothing to do with the jury selection.  That was Mr. Duchardt's providence.  And Mr. Duchardt's, this particular question doesn't show up in his affidavit because this was not an issue raised.

And so he was responsive to the issues that were raised in that proceeding.

THE COURT:  And there is nothing in the record --

MR. CASEY:  What we do know is that Mr. --

THE COURT:  -- is there anything in the record with respect to him and whether or not he saw this jury questionnaire or asked any follow up voir dire questions on

it?  I know Ms. O'Sullivan said she wasn't involved  in that but that -- she doesn't say anything about him?

MR. CASEY:  He did.  And in fact, we know he saw it because he asked a follow up question to Juror 13 about, "I see in your questionnaire, you have a young child, will you be available for this proceeding?"  So from that question, we know that he did look at that questionnaire.  But if you also look at the questionnaire, there would be reasons why Juror 13 would be a good juror looking from the perspective of Mr. Purkey.

And again we go back -- we go through this in our response below.  She makes comments about she thinks that number one cause of crime is having a bad family. Well, Mr. Purkey was not contesting that he raped his victim.  That is your similarity that you are worried about.  Mr. Purkey's defense wasn't that he raped. His defense was that he didn't kidnap and that -- and his mitigation case.

And so in her questionnaire, she gives some real reason to think she might be sensitive to the mitigation issue and so her similarity to the Defendant really isn't on an issue that is even contested.  But she says things that you could easily just on the face of it, see that might be useful with regard to having her on the jury.

And so --

THE COURT:  What about the mitigation point?

lnc                                                                    36

Because another issue your opponents raised is that even after getting permission to hire mitigation specialist, they first just hired some friend and the actual professional mitigation specialist really only had something on the order of two months to put a case together which is in death cases a very, very short period of time.  And so now with the 2241 stage, with much more time they have really come up with a full record.

I think the extent to which they are claiming the record is more fulsome again it -- this Court would need to, I would refer to the Court to the papers but in particular if you look at the Eight Circuit's two decisions, I think the extent they now say the records are more fulsome -- does it not do it --- justice?

There were -- there was a fulsome mitigation case put on at trial.  I think there were 18 witnesses called.  Many of the same people that were called now today they say well these same people have more to say.  I think that is very much a matter of degree and comes with its own skepticism that 20 years later someone's testimony has changed.

But it -- what you have is a very fulsome case with regard to Mr. Purkey's claimed psychological, emotional, physical abuse.  The testimony at trial with regard to that.  An additional amount of that was put into the 2255 and both

the District Court and the Eighth Circuit said no this is merely cumulative. And nothing else has brought today a lot of the same testimony as sort of hidden in a different ways, so for example, now they say well Mr. Purkey's brother would say that he was physically abused by his mother, and that wasn't testimony at trial.

But the issue of Mr. Purkey being physically abused by his mother, sexually abused by his mother was at trial, it was just brought in through a different witness. And so the substance of the claims are largely the same and they are very duplicative and I would refer this Court to the Eighth Circuit's decision on his 2255 which goes into that in great detail.

THE COURT: Can you -- speaking of the Eighth Circuit, you made a big point in your brief about whether the Eighth Circuit law is the law that we ought to be following here which would be quite unusual or the Seventh Circuit law and I wondered if you could explain why you think that matters or which issue you think that matters to?

MR. CASEY: It is actually a fairly narrow point of when Eighth Circuit law should apply. And the point is with regard to Juror 13, whether or not the standard is made that Mr. Duchardt was ineffective. And at the time of that trial, the Eighth Circuit had recognized that it had not clearly recognized a -- a implied bias claim and in fact, that its

lnc                                                                      38

law was at least unclear on that issue.

And when judging Mr. Duchardt's effectiveness, the Government's position is the only way to judge that, is with regard to the law that he was practicing under.

THE COURT:  Is that because of forum shopping concerns?  Or what is the reasoning behind that rule?

MR. CASEY:  Well, Your Honor, I think the reasoning is, is he needs to follow the law of the locality he is practicing in.  And if the law in that locality is that this is not a -- this is not an established claim, then he needs to make strategic decisions based on that.  If it was an established claim then maybe strategically he approaches it differently.  But if it is not, then there is certain considerations the lawyer will need to take into account.

And because --

THE COURT:  So you are saying that in order to assess his ineffectiveness at the time, we have to look at the law in the jurisdiction where the trial was ongoing?

MR. CASEY:  That is exactly the point, Your Honor.  In order to assess his ineffectiveness in not moving to exclude Juror 13, without further voir dire, just as presumptively biased, you would need to look at Eighth Circuit law and Eighth Circuit law that claim was not available.

THE COURT:  Was it not available --

MR. CASEY: Before --

THE COURT: -- or just not as strongly available? I don't know that the Eighth Circuit Court would have said that this was not competent evidence.

MR. CASEY: In the circumstance of presumptive bias with regard to someone who is not, you know, a participant or a relative the Eighth Circuit had earlier cases that say it wasn't available and then they had some -- some in between cases that say it was or it is possibly.

THE COURT: Right, so I am just saying --

MR. CASEY: In 2008 --

THE COURT: -- presumptive bias is a very strong point to make but implicit bias isn't the same thing as presumptive bias. You can try to show without resting on a presumption that there was nonetheless bias. That you could infer from the circumstances.

MR. CASEY: And in this circumstance, the actual allegation of ineffectiveness is that despite --- asking her some follow up questions and beside giving her the commitment that she would be unfair, that he didn't ask specifically follow up questions. And there is no case that I am aware of and there is no case that they cite where a juror disclosed the ground for alleged bias, said that they could be impartial but then were nonetheless -- there was error found in not striking that juror.

And that is the case here.  And so what we have fallen back to is the one lawyer who did do the jury voir dire, we know that he saw -- we can divine from the record that he saw her questionnaire.  And we know that he didn't ask these follow up questions.  And the rest is pure speculation.  And there is just as ripe speculation that he had good trial reasons not to as there is speculation that he did.

THE COURT:  So I would like to go back for one minute to Martinez, Trevino.  A big part of what the Government has argued is that you know, we will be stuck with an infinite line of post conviction proceedings if we were to agree with Mr. Purkey. And it seems to me the same could be said about the 2254s in Martinez, Trevino except that it hasn't happened.

And there are devices to curb abusive litigation whether or not there is the Anti-Terrorism Act and so on.  So I wonder whether that is really a sound reason to make a legal decision to say that an avenue is not open to somebody.

MR. CASEY:  Well there is a fundamental difference between bringing additional claims that are sound in 2255 versus bringing in an initial claim in 2254.  And that initial claim in 2254 is then subject to 2254's restrictions on second and successive.  And so one of the reasons is that you haven't seen the great uptick in claims is because

Martinez and Trevino say nothing about second and successives in the 2254 context.

The other reason you don't see the great uptick in claims is that a prisoner still has their right to bring their initial 2254.  And what Martinez and Trevino are about are what claims they get to litigate within that proceeding. And so because Martinez and Trevino opens up the door to additional claims, but the fact of the filing and the fact that the Court would have to deal with the filing again, wouldn't necessarily greatly increase because the prisoner still has their right to bring their initial 2254.

The argument in this case is about second and successives.  And that is where the great increase of filings is going to come from.  And Martinez and Trevino are very clear, that they apply to pro se defendants just as well as they apply to a defendant with counsel. And I think in Ida versus Garson(sic), the Supreme Court observes that 95 percent of Federal -- of 2255 claims are brought or at least initially brought pro se.

And so you really don't have a limiting principle there.  If you extend Martinez and Trevino to the savings clause, not to the initial filing, that is where the initial claims would come in and they would come in contrary to all of the ways that Congress sought to limit those claims.

THE COURT:  Well Congress was certainly -- I agree

lnc                                                                42

with you that Congress was looking to some kind of finality in these claims, there is no doubt about that.  But on the other hand, it is a balance and to shut out a potentially meritorious claim that didn't get raised because there was counsel that was so ineffective and there was so much prejudice that the Strickland standards are applied, doesn't really show up in Congress' discussions at all.

So I suppose that is where the -- I come back to the question whether there is in fact any reasonable expectation that you are going to have counsel or effective counsel in 2255s most of the time the answer may be no.  But maybe in the death cases, maybe there will be some other kind of case, the answer might be yes.

MR. CASEY:  Well, and then Your Honor, I think -- I think that line of what that expectation also only goes so far and Martinez and Trevino do say it has to be a substantial claim and none of these are.  One of the claims is just a rehash of mitigation that has already been brought and so he has had that opportunity.  The savings clause is about the opportunity and he had the opportunity to bring all of these claims, there is nothing structural that prevented it.

But we know he had the opportunity to bring mitigation claim because he did.  And second guessing the way or the manner is not what the savings clause is about.  The

third claim -- the one we haven't talked about yet is pure speculation. There -- I know in the reply brief -- I know in our brief we say well there is no evidence that Mr. Duchardt told Mr. Purkey to lie. And their reply brief is we don't need evidence. Well it is a 2250 -- it is a habeas petition, so in fact you do. Habeas petitions are brought and they have to be certified on the penalty of perjury and they do need to have evidence.

And so that would clearly be denied in the first instance habeas as a conclusory allegation. And it would be denied in the first instance. It is entirely merit-less. So two of those claims -- one has been brought and one is conclusory allegation that is merit-less. So now all you are left with Juror 13 issue, that you cannot find deficient performance where the law was unsettled.

And so all three -- none of these three claims are substantial claims. And so I do think that at least with regard for this case, there was no abandonment and in any event, the claims that were found are not substantial.

THE COURT: Okay. I think we will take it from there. So Mr. Schoenfeld, do you have anything further?

MR. SCHOENFELD: I do, Your Honor, I will try to be very brief. So I want to address two points. The first is just for (indiscernible) Juror number 13. No court has ever addressed this issue. No court has ever addressed the

lnc                                                                44

question of whether Juror 13 should have been seated on this jury and whether Trial Counsel was ineffective for failing even to examine the juror on this question. I would point the Court to page 1170 of the Appendix which is Ms. O'Sullivan's declaration which says very clearly, "I had no knowledge until I was shown the questionnaire by Mr. Purkey's current counsel that Juror number 13 who served on the petit jury at Mr. Purkey's trial had disclosed that she was the victim of an attempted rape when she was 15 years old."

She acknowledges that she didn't play a role in voir dire.  But she says, "I don't believe Fred" Mr. Duchardt, "noticed the disclosure either because he never mentioned it nor did he raise it during voir dire."  So the only record evidence is the declaration from his trial counsel saying that this issue was not even detected by the lawyer responsible from ---.

He slept on this claim. And so we come to the question of whether there was any strategy that could have justified the failure even to examine the juror on this.  And I didn't hear the Government offer anything that would account for a strategic decision not to examine the juror on this.

THE COURT:  But what about the argument that the -- where the lawyer was practicing was less favorable than perhaps it might be today or it might be in the Seventh

lnc                                                                45

Circuit?

MR. SCHOENFELD:  I think the Eighth Circuit law is entirely clear that under circumstances like this, a juror is presumed to be bias on an a structural error.  If he --

THE COURT:  Do you think it was clear at the time or you say it is clear now?

MR. SCHOENFELD:  No, I think it was clear at the time.  The case the Government relies on is a 2008 decision, Sanders versus Norris which says that there may be some lack of clarity -- this is an ineffective assistance of counsel claim.  They say there may be some lack of clarity about the circumstances under which this Court might recognize in (indiscernible).

The cases they point to as we explained in our brief, for circumstances where only a showing of actual bias suffices, is the line of cases that relates to a juror sitting successively in the same trial, the same case.  The Court points to case law from the Eighth Circuit that makes clear that they recognize a (indiscernible) bias under certain circumstances.  And that Court's case law and this Court's case law go back to the Supreme Court's decision in Smith versus Phillips, where Justice O'Connor --- this precise point.

There were circumstances where you cannot allow a juror no matter what they say to be presumed to be impartial

in a jury.

THE COURT:  Well, Mr. Schoenfeld, are you asking us then to apply Seventh Circuit law and it looks like from page 18 of your brief, footnote 9, you are.  We are struggling with this question of the applicable law.

MR. SCHOENFELD:  I don't think it matters. I mean, this is the same as the choice of law analysis where the California's law, the New York's law, you know are the same. You don't need to do the analysis.  I don't think the Court needs to reach this question.

If you look at the Supreme Court's decision in Smith versus Phillips and if you look at the way that the -- between 1998 when Mr. Purkey or when the crime was committed and in 2003 when he was convicted, what the state of the Eighth Circuit law looked like on this specific question, not the exception or not its outlier(sic) case, but how Smith versus Phillips was properly interpreted, you can apply by its circumstances.

And what this Court said in Huntley versus Gadevens(sic), is that the victim of a crime similar to the one at issue cannot be presumed to be impartial. And in fact, is presumed as a matter of law to not be impartial. And that is a structural error that this Court needs to -- that I think with no explanation for why a trial lawyer would desist from questioning the juror on this, I think the Court

presumes bias as a matter of law and the juror should not have been seated.

And even if there was a question of actual bias, even if that were the standard here, again there would need to be some explanation of why the juror -- why the trial lawyer failed to examine the juror on this point to ensure that they were not in fact biased.  There is no strategic explanation, none -- none that the Government has posited and certainly nothing that Mr. Duchardt said in his 117 page affidavit that would justify this.

He just missed -- he just slept on this issue which is a giant hunking(sic) issue on the face of the record that neither trial counsel raised nor 2255.  I want to go very quickly before my time is up just to the limine principles. I do think the issue presented in this case as it is clear on page 5, is whether a death eligible prisoner has a right to 2241.  I think the Court can limit it in that way based on 3599 or the Woodson Williamson argument.

I also think that there is a significant very concrete backstop for any concerns about the abuse of the written, very well established case law in McCleskey versus Zant, Fay versus Noia, when Congress enacted AEDPA, it did not touch the savings clause.  That looks today exactly as it did pre-AEDPA and this Court can use the same pre-AEDPA it used at the writ principles in policy any concern about a

lnc                                                                                  48

deluge of claims arising from this case.

THE COURT:  All right.  Thank you very much.  We appreciate the efforts of both counsel.  The Court will take this case under advisement and in recess.

(Whereupon, at 11:10 a.m., the hearing concluded.)

lnc                                                                        49

C E R T I F I C A T E

I certify that the foregoing is correct transcript

from the electronic sound recording of the proceedings in the

above-entitled matter.

*Lisa N. Contreras  6/17/2020*
Lisa N. Contreras                    Date
Certified Transcriber
Certificate No.:  CET**D-474